# Sharp *v.* The State.

## *Murder.*

(Decided February 11, 1915. Rehearing denied May 13, 1915.
69 South. 122.)

1. *Trial; Objections to Evidence; Motion to Exclude.*—The rule is that if it is apparent that illegal testimony will result from a responsive answer to a question asked, objection must be interposed to the question; hence, if no objection is made to the question it is proper to overrule a motion to exclude the answer.

2. *Homicide; Evidence; Threats.*—The fact that defendant had made threats against the police officer, although not particularizing either of the deceased officers by name, was admissible as tending to show an intentional and malicious killing of the policeman who had come to arrest him.

3. *Same; Surrounding Circumstances.*—As a general rule, in prosecutions for murder, evidence as to the relative position of a witness, the deceased and the defendant at the time of the killing is admissible.

4. *Witnesses; Credibility.*—Evidence that certain witnesses had been placed in different places of confinement, was competent as tending to shed light on the credibility of their testimony.

5. *Trial; Argument of Counsel.*—Where the state's counsel had said in argument to the jury, "Don't you think it about time we are calling a halt in this country? Don't you think there has been enough officers killed in this country by outlaws, and that it is about time to stop them?" The statement was proper, and the objection properly overruled in the absence of a suggestion that the court instruct the jury to disregard it, the objection being made to the statement and not to the court.

6. *Homicide; Evidence; Drunkenness.*—Questions as to what extent the defendant drank intoxicating liquors, or had been drinking such liquors for the last two or three years, were properly excluded as immaterial.

7. *Charge of Court; Covered by Those Given.*—Where the court had already given a requested charge that the jury should acquit the defendant if there was a probability of his innocence, it was not error to refuse to instruct that the jury should acquit if there was a reasonable probability of his innocence, suggested by any part of the evidence.

8. *Same.*—It is not error to refuse instructions substantially covered by written instructions given.

9. *Evidence; Drunkenness.*—It was competent in a prosecution for murder, to show that defendant did not appear drunk, and was transacting business and talking sensibly.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR,

Tim Sharp was convicted of murder in the first degree, and he appeals. Affirmed.

MERRILL & WALKER, for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

THOMAS, J.—The defendant was convicted of murder in the first degree and sentenced to suffer death. He denied the killing, and sought to show that other persons present committed the crime. The undisputed evidence was that at the time of the homicide the deceased, William Dillard and Jim Ashwood, were policemen of the city of Anniston, and that a warrant for the arrest of the defendant was delivered to them, and that between 11 and 12 o'clock in the day, to execute the process, they went to Tenth street, where defendant lived in an upstairs room. The head of the stairway leading from the sidewalk was closed by a glass door covered from within by a cloth curtain. At the time of the homicide only the two officers were on the stairway; one standing close to the door, looking through the glass, and the other bending down, looking under the door. The cloth curtain was pulled aside, and two shots from within were fired, causing their death.

(1) The evidence further showed that defendant's brother-in-law had that morning been arrested for violating the prohibition law, and that while procuring the execution of the bail bond the defendant made threats against the authorities issuing process against defendant and his brother-in-law, and who would come

to arrest defendant. The state's counsel asked Will Rayfield the question, "Before he would be arrested, he would die and go to hell?" Witness answered, "He said it was not his whisky, and that he would die and go to hell before he was arrested." The defendant did not object to the question, before answer. After the answer, he moved to exclude, and the court properly overruled the motion. The rule is that objection must be addressed to the question when the question is propounded, if it is apparent that illegal testimony will be the answer. If the objection is not interposed until after answer responsive to the question, the objection is properly overruled. A party cannot speculate on the answer of a witness, to claim the benefit of it, if favorable, or, if prejudicial, to have the testimony excluded on motion. If the question is such that material and relevant testimony may be the answer, and when answered the testimony is not responsive thereto, or is immaterial and illegal, motion must then be made for the exclusion of the answer.—*Pope v. State,* 168 Ala. 33, 53 South. 292; *Downey v. State,* 114 Ala. 108, 22 South. 479; *Ellis v. State,* 105 Ala. 72, 17 South. 119; *Wright v. State,* 108 Ala. 60, 18 South. 941; *Washington v. State,* 106 Ala. 58, 17 South. 546; *West Pratt Co. v. Andrews,* 150 Ala. 368, 376, 43 South. 348; *Rutledge v. Rowland,* 161 Ala. 114, 49 South. 461; *Kramer v. Compton,* 166 Ala. 216, 221, 52 South. 351.

The defendant left the mountain, before day, in company with his brother-in-law, Bobo, and witness Dear, and arrived in Anniston at about 4:30 a. m. Bobo was arrested for violating the prohibition laws, and defendant was seeking to have his bond made. Defendant told Dear that they had issued a warrant for defendant and Dear, charging the same offense; further stating to

Dear that "they are liable to come up here after us after awhile; the first s—— of a b—— comes up here after me, I am going to shoot his head off." Later he said "that he would kill the first one that came there to arrest him." Mrs. Humphries, who was at defendant's room, said, "There are some policemen coming up," and asked defendant to "behave himself," and he replied, "Well, if it is them, I am going to kill them; I have done said it, and I am going to stick to it; I have done said it, and I am going to kill the first s—— of a b—— that sticks his head in the door." He went out of the room a short time thereafter. Two shots were fired by the defendant, and after he had fired on the policemen he walked down the hall to the back door, and then came into the room and said, "I am into it now; all you fellows get back into the room, and don't nobody know anything."

(2) It is clear beyond a reasonable doubt that, at the time the officers were fired upon by the defendant, he acted upon malice against the officers, who were trying to execute the process on him; that he had formed the specific design or intention to kill any policeman who should attempt to arrest him; and that with malice, deliberation, and premeditation he intentionally shot the deceased, William Dillard, and this without justification, and with no other motive than to prevent an arrest of himself for a violation of the prohibition law. The threats made by the defendant against a class to whom the deceased belonged were properly admitted for the consideration of the jury, as tending to show that the killing was intentional and with malice, after deliberation and premeditation.—*Morris v. State,* 146 Ala. 66, 90, 41 South. 274; *Knight v. State,* 160 Ala. 58, 64, 49 South. 764; *Harrison v. State,* 79 Ala. 29;

*Anderson v. State,* 79 Ala. 8; Mayf. Dig. p. 838, §§ 10, 11, 15; *McManus v. State,* 36 Ala. 285; *Plant v. State,* 140 Ala. 52, 37 South. 159.

The fact that the declaration of the threat did not particularize either of the deceased policemen by name did not render it inadmissible. It was for the jury to determine whether the deceased, by class, was referred to. The facts and circumstances under which the several declarations or threats were made affirmatively show that they were voluntary, and that there could be no valid objection that a proper predicate was not laid for the admission of the same.—*Heningberg v. State,* 153 Ala. 13, 45 South. 246; *Stone v. State,* 105 Ala. 60, 17 South. 114; *Price v. State,* 117 Ala. 114, 23 South. 691; *Bush v. State,* 136 Ala. 85, 333 South. 878; *Morris v. State, supra.*

(3) It was necessary to locate exactly the position of the deceased policemen when they were fied upon, to locate the defendant and the several partis present, and to show their opportunity for seing and knowing who committed the offense. It was then competent to prove by Dr. E. M. Sellers, a practicing physician, who examined the bodies of Dillard and Dashwood, the nature and character of the wounds; and it was competent to show by witness Claude Dear that he and Sol Brimer were at the time of the shooting on a bed, from which position the front door where the shooting occurred could be seen, and that they did see the defendant fire the two shots through the glass door, after removing the curtain. There was no error in permitting the witness to answer the question, "State whether or not Sol Brimer was sitting on a line from the bed, through that door, to the hall door."

(4) The evidence showed that witnesses Claude Dear, Sol Brimer, Will Rayfield, and Ike Gaston were in de-

fendant's room before and at the time of the shooting, and that they were arrested and put in jail on the day of the killing. A deputy sheriff, Borders, was asked, "Where were they placed?" The court asked the solicitor, "What is the object?" and the solicitor replied, "My object, if your honor please, is to show they were put separate, one in one jail, and one in the other." Over defendant's objection and exception, the solicitor was permitted to ask the witness the questions, "Where were they placed?" and witness answered "Claude Dear was put in the city hall, and Sol Brimer was put down in the county jail." "Where were Will Rayfield and Ike Gaston?" and witness answered, "Ike was locked up first in the city hall, and Will Rayfield in the county jail." The solicitor asked, "Has Brimer or Dear been where they could communicate with each other or talk with each other since the time they were arrested until they came here to-day?" and witness answered, "They could not talk to each other; they were kept separate all the time."

These several questions and answers, separately and severally objected to by defendant, were competent as tending to shed light on the truth or falsity of the testimony of the witnesses. The right of "sequestration of witnesses" has not been questioned. If the judge deems it essential to the discovery of truth that witnesses should be examined out of the hearing of each, he will so order it. This order, upon the motion or suggestion of either party, is rarely withheld; but, by the weight of authority, the party does not seem to be entitled to it as a matter of right.—1 Greenl. on Ev. § 432. On the examination of witnesses, it is likewise competent to show the opportunity that witness had of seeing, hearing, or knowing the facts stated, and

interest or bias, that the jury may be the judges of the credibility of the testimony. The questions propounded to, and the answers of, Deputy Sheriff Borders were competent as tending to rebut an inference that might be drawn unfavorable to these witnesses, on account of the similarity of their testimony.

(5) The solicitor, in argument to the jury, said: "Don't you think it about time we are calling a halt in the country? Don't you think there has been enough officers killed in this country by outlaws, and it is about time to stop them?"

The defendant objected to this *statement*. In *Birmingham Railway, Light & Power Co. v. Gonzalez*, 183 Ala. 273, 61 South. 80, Mr. Justice Somerville, for the court, says: "The effect of our decisions is that a mere objection to already spoken words does not reach the evil aimed at, and that the court must be appealed to to exclude them from the consideration of the jury, failing which there is nothing presented for review by an exception.—*K. C. M. & B. R. R. Co.*, 2 Webb, 97 Ala. 157 [11 South. 888]; *Cutcliff v. B. R., L. & P. Co.*, 148 Ala. 108 [41 South. 873]; *B. R., L. & P. Co. v. Drennen*, 175 Ala. 338 [57 South. 876, Ann. Cas. 1914C, 1037]. * * * Where the objectionable statements are objectionable only because they are of matters of fact that are not in evidence, it is both just and reasonable to require the objection to so state to the court, and thus aid it to that extent in the decision of the question raised."

No such suggestion was here made to the court, but the objection was made to "this statement" of the solicitor. In *Cross v. State*, 68 Ala. 476, Judge Stone, speaking the conclusions of the court as to reversal on error for improper statements by counsel in argument, said:

"The statement must be made as of fact; the fact stated must be *unsupported by any evidence,* and must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury."

The argument of the solicitor was a proper one. The evidence showed without conflict that two police officers of the city of Anniston, while in the discharge of their duty to execute the process of the court, had been assassinated by outlaws between the hours of 11 and 12 o'clock in the daytime. The objection of the defendant was to "this statement" of the solicitor, and was therefore not properly made; and no error intervened by this ruling of the court.—*Stone v. State,* 105 Ala. 60, 72, 17 South. 114; *Nuckols v. State,* 109 Ala. 2, 19 South. 504; *Cantrell v. Lindsey,* 105 Ala. 233, 51 South. 558.

(6) The state's witness, Will Rayfield, on cross-examination testified that he had known the defendant, Tim Sharp, "two or three years;" that he had been associated with and had seen defendant frequently during that time; that "Mr. Sharp is a hard drinker; he drinks a right smart; he drinks all the time." Witness was then asked by the defendant's counsel, "To what extent does he drink? There was no error in the ruling of the court sustaining the objection of the state's counsel to the question—calling, as it did, for a statement of fact, extending over the period of two or three years in which witness had know the defendant. For the same reason the ruling of the court was free from error, in refusing to allow defendant to ask the witness Claude Dear to "tell the jury whether or not, and if it is not a fact, that Mr. Sharp, since you have known him, has been a constant and heavy drinker."

The only pertinent inquiry was whether, immediately before and at the time of the homicide, the appel-

lant was so intoxicated as to render him incapable of forming a specific design or intent.—*Gilmer v. State*, 181 Ala. 23, 61 South. 377; *Armor v. State*, 63 Ala. 173. The question propounded to the witness did not inquire of defendant's condition immediately before and at the time of the homicide, and the court properly refused to allow the question to be answered. There was no plea of insanity by reason of prolonged drinking; therefore the questions of how long he had been accustomed to drink, whether he had been a constant and heavy drinker, and to what extent he had drunk in the year or two before the homicide, were immaterial and unimportant.—*Heningberg v. State*, 151 Ala. 26, 43 South. 959.

(7) The defendant requested the court to give many written charges, of which the court gave 30. Given charges numbered 1 and 2 are as follows: (1) "If there is a probability of the defendant's innocence, the jury should not convict him."

(2) "If there is a probability of the defendant's innocence, the jury should acquit him."

The defendant then requested in writing and the court refused, charge No. 3: "If there is a reasonable probability that the defendant is innocent, which is suggested by any part of the evidence, after you consider all the evidence, you should not convict."

No error was committed by the court in its refusal to give charge No. 3. Given charge No. 2 was more favorable to the defendant than the charge refused, which, if error, was cured by given charges 1 and 2.

(8) There was no error in the refusal of charges 1, 2, 4 and 12, asserting substantially the same proposition as that in given charges 10 and 26.—*Miller v. State*, 110 Ala. 69, 87, 20 South. 392; *Murphy v. State*,

108 Ala. 10, 18 South. 557; *Smith v. State,* 92 Ala. 30, 9 South. 408; *Burns v. George,* 154 Ala. 626, 631, 45 South. 421; *Coghill v. Kennedy,* 119 Ala. 641, 24 South. 459; *Koch v. State,* 115 Ala. 99, 22 South. 471.

Refused charges 5, 6, 7, 8, 9, 10, and 11 were abstract, as the evidence nowhere shows the defendant to have been insane or drunk at the time of the commission of the offense. The evidence does not show that at the time of the fatal shot the defendant was intoxicated, so as to be incapable of forming a specific intent or design. The defendant had made threats to kill any one of a class of officials who should come to arrest him that morning. The law will not permit a man to form a design to commit the specific crime of murder, and thereafter voluntarily drink to "brace" himself in the commission of the homicide, or to palliate his offense. —*Whitten v. State,* 115 Ala. 72, 22 South. 483; *Heningburg v. State,* 153 Ala 13, 45 South. 246; *Gilmer v. State,* 181, Ala. 23, 61 South. 377.

(9) There was no objection made to the statement of the witness Dear that defendant did not appear to be drunk, and was transacting business, and was talking sensibly and rationally. This was competent testimony, even if objection thereto had been made by defendant, for the rule declared in *Gassenheimer v. State,* 52 Ala. 317, and *Johnson v. State,* 17 Ala. 623, has long been departed from.—*Thornton v. State,* 113 Ala. 43, 46, 21 South. 356, 59 Am. St. Rep. 97; *Linnehan v. State,* 116 Ala. 471-480, 22 South. 662; *James v. State,* 104 Ala. 20, 28, 16 South. 94; *Prince v. State,* 100 Ala. 144, 147, 14 South. 409, 46 Am. St. Rep. 28; *Jenkins v. State,* 82 Ala. 25, 28, 2 South. 150; *Carney v. State,* 79 Ala. 14, 17; *S. & N. R. R. Co. v. McLendon,* 63 Ala. 266, 276; *B. R. & E. Co. v. Franscomb,* 124 Ala. 621, 623,

27 South. 508; *Taggert v. State,* 143 Ala. 88, 92, 39 South. 293, 111 Am. St. Rep. 17; *Sims v. State,* 146 Ala. 109, 117, 41 Sopth. 413; *Hainsworth v. State,* 136 Ala. 13, 34 South. 203.

There being no error in the record, the judgment is affirmed.

Affirmed. All the Justices concur.