# Hill v. The State.

## Murder.

(Decided June 30, 1915.  Rehearing denied November 18, 1915.
69 South. 941.)

1. *Trial; Objections to Evidence; Time.*—Where the answer is responsive to the question, and no objection is interposed to the question, nor motion made to exclude until after the answer, the motion to exclude comes too late.

2. *Homicide; Evidence.*—Where it appeared that deceased's body was concealed and not found for several days after he was killed, it was competent to show the condition of the body on the question of the identity of deceased, the length of time it had been concealed, and how it had been concealed, and as shedding light on the corpus delicti; the defendant not having admitted killing deceased. The subsequent admission by defendant that he killed deceased could not put the court in error for having admitted such evidence.

3. *Trial; Argument of Counsel.*—The remark of the solicitor made in the hearing of the jury, "It is a horrible thing to relate" was rendered harmless where the court promptly repudiated it, at the same time stating that it was an improper remark, and that the jury must not consider it.

4. *Homicide; Evidence; Subsequent Conduct of Defendant.*—The acts, declarations and conduct of a defendant against interest, are admissible; hence, it was not error to admit evidence as to defendant's conduct with reference to an investigation, and his selection of a coroner's jury.

5. *Trial; Reception of Evidence; Immaterial.*—Where, on the cross-examination, the wife of deceased, in answer to the question, "Nobody else?" replied that she saw the wife of defendant, and that "I would walk up and down the road and cry, and she would walk up and down the road and sing," and defendant made no motion to exclude this answer, but when the answer was repeated, asked the

witness if she did not know that defendant's wife was in no condition to do this, replied: "She was in no worse shape than I was, if she was," the exclusion of this evidence on the objection of the solicitor was not error, since the failure of defendant to have the answer as to the conduct of the witness, and the wife of defendant excluded, did not give him the right to introduce irrelevant testimony.

6. *Homicide; Evidence; Self-Serving Declarations.*—Where a defendant was being tried for murder, he could not be permitted to testify that he came to A., intending to give himself up, that he and his mother were bothered, that she advised him to leave home, that he did not want to leave home, and that he told other parties about the killing soon after it occurred, since self-serving declarations and acts of defendant are never admissible.

7. *Criminal Law; Evidence; Other Offenses.*—Where a defendant was being tried for murder, evidence that defendant had been accused of selling liquor, and that there were three indictments pending against him for running a still, was properly excluded as immaterial.

8. *Homicide; Evidence.*—Where a witness testified that he was at the house of defendant on the day of the murder, that when defendant came in he was bloody and dirty and had a gash across his head about an inch and a half or two inches long, questions as to what defendant was doing, and whether or not he was crying, were properly excluded.

9. *Evidence; Facts or Conclusions.*—Where a witness testified that he heard two shots, it was not competent for him to testify as to the reasons why his attention was attracted to the shots.

10. *Witnesses; Character; Examination.*—Where a witness testified that the general reputation or character of defendant was good, it is competent on cross-examination to ask him if he has not heard of specific acts of defendant tending to militate against defendant's reputation or character.

11. *Same.*—Where the witness testified to the bad character of defendant, it is competent for defendant on cross-examination to test the witness' knowledge of defendant's character, but the inquiry should be confined to reputed acts before the commission of the offense charged.

12. *Appeal and Error; Harmless Error; Instruction.*—Where the court has committed an error unfavorable to defendant in the admission of evidence, such error is cured by the subsequent exclusion thereof and a clear and explicit instruction to the jury to disregard it.

13. *Witnesses; Impeachment.*—The state may impeach a witness for defendant as to his truth and veracity.

14. *Same.*—Where the proper predicate had been laid for the impeachment of defendant, it was competent to permit a witness to testify that at the time and place indicated in the predicate, the witness had a conversation with defendant in which defendant stated that he had killed deceased below a certain still and dragged him 30 yards away, or words in substance to this effect, since the rule

[Hill v. The State.]

does not require perfect precision as to either time or place, persons present, or the statement made; the predicate is sufficient when it is clear that the witness is not taken by surprise, and is afforded ample opportunity to make any explanation he desires.

15. *Same; Cross-Examination; Rebuttal.*—Where the state had called a witness in rebuttal, the court properly excluded a question asked him by defendant's counsel as to whether he told defendant that he had better watch deceased; the court having already permitted the witness to state that he told defendant that deceased was a dangerous and bloodthirsty man, such testimony not being in rebuttal, and being no more than the advice of the witness to defendant.

16. *Same.*—The contradictory statements of a defendant, as to their evidential weight, were for the jury as to the fact disclosed by them, and the court properly refused to charge that such statements were not admissible for the purpose of showing the guilt of defendant, but were only admissible and should be considered only to determine the weight to be given defendant's testimony.

17. *Homicide; Instruction; Self-Defense.*—Where, under the evidence it is a question for the jury whether or not defendant should have retreated without increasing his peril under the circumstances, charges which ignore the duty to retreat are properly refused.

18. *Same.*—Charges on self-defense are properly refused where they pretermit a reasonable or bona fide belief by defendant that his life was in danger, since the apprehension of danger which will justify a killing in self-defense must be bona fide and reasonable.

19. *Same; Duty to Retreat.*—The rule that a man's house is his castle, and that he is under no duty to retreat therefrom to avoid killing his assailant, has been extended to one's place of business, or his place of refuge, and he has the same right to defend such a place against intrusion, and is under no greater necessity of retreating therefrom, than from his dwelling; but the rule does not extend to a place of unlawful business, such as an illicit distillery set up and maintained by the slayer at a place other than his dwelling.

20. *Same.*—The law demands retreat if it is reasonably apparent that it can be done without increasing danger, and charges declaring the rule of retreat to be inability to retreat with safety, are erroneous.

21. *Same; Misleading.*—Charges which are misleading are properly refused.

22. *Same; Unintelligible.*—The use of the word "or" instead of the word "of" will justify the refusal of a charge, if it renders the charge meaningless or likely to be misunderstood.

23. *Same; Argumentative.*—A charge asserting that the law gave defendant the same right to protect himself from death or great bodily harm when an unprovoked attack is made on him at or near an illicit still, that he would have at or near a corn mill, was argumentative and stated no proposition of law on which defendant had a right to request instructions.

24. *Same; Self-Defense; Retreat.*—A man has no right to take life on the ground alone that he honestly believes his life is in danger or on the ground that he was free from fault in bringing on the diffi-

[Hill v. The State.]

culty, since the circumstances may be such that he can retreat without increasing his peril, and that it is his duty to do so; hence, a charge asserting that if deceased went up to defendant's still, and without fault on defendant's part grabbed a rifle and knocked defendant down, and then attempted to shoot defendant with a rifle, and thereby led defendant honestly to believe that his life was in danger, or that he was in danger of great bodily harm, he had a right to shoot deceased, was properly refused.

25. *Same; Apprehension of Danger.*—To justify a killing in self-defense, the circumstances at the time of the homicide must not only be such as to induce the reasonable belief, or belief in the mind of a reasonable man, that there was imminent peril to life or limb, and that retreat cannot be resorted to without increasing his peril, but must actually induce this reasonable belief in the mind of the slayer.

APPEAL from Gadsden City Court.

Heard before Hon. J. A. BILBRO.

Harmon Hill, alias, was convicted of murder in the first degree, sentenced to imprisonment for life, and he appeals. Affirmed.

Defendant was prosecuted for killing Will Tidwell. He was killed on Thursday and his body not found till Sunday. The physician testified that death was the result of a gunshot wound in the left breast. A witness testified that defendant came to his house Friday morning and told witness that he had got his man, that he was sorry of it, that he had to do it, that the man's name was Will Tidwell, and that the body was up on the mountain side, and that he had covered it with leaves and stuff. It appeared from the testimony of the witnesses that defendant was present, like other spectators, when the coroner's jury was impaneled, and that defendant himself chose the jury by calling out the names of those who were selected. The other exceptions to evidence sufficiently appear from the opinion.

The following charges were refused defendant: (B) Contradictory statements, if any, on the part of defendant, are not admissible for the purpose of showing the guilt of defendant, but are only admissible for and

[Hill v. The State.]

should be considered by the jury only to determine the weight they will give the testimony of defendant as a witness in the case.

(A) If, at the time of firing the fatal shot by defendant, defendant reasonably believed that he was in danger of suffering death or serious bodily harm at the hands of deceased, and defendant was without fault in bringing on a difficulty with deceased, or if the jury have a reasonable doubt from the evidence as to the above proposition, they will find defendant not guilty.

(C) If the jury believe from the evidence that deceased had knocked defendant down with a rifle, and it appeared to defendant that he was in danger of suffering serious bodily harm, at the hands of deceased, or death, and defendant shot deceased, the jury must acquit defendant, provided they find from the evidence that defendant was free from fault in bringing on the difficulty, or if the jury have a reasonable doubt from the evidence as to whether or not defendant acted in self-defense as above defined.

(I) The defendant is a competent witness in this case, and you cannot capriciously disregard the statement of defendant, and if you believe that Tidwell made an unprovoked attack on Hill, calculated to impress the mind of a reasonable man that Hill's life was in danger, then he had a right to kill Tidwell to save himself, and the law will hold Hill harmless, and your verdict should be for defendant.

(E) You cannot convict defendant on the charge in this indictment for the reason that he let the body lie on the mountain from Thursday until Sunday without telling the officer.

(F) You cannot convict defendant because he said nothing to an officer about the killing.

(H) The burden is on the state to show by the evidence beyond all reasonable doubt that Hill, without excuse, and unlawfully, killed Tidwell, before they can find defendant guilty of any degree or homicide charged in the indictment, and, if the jury have a reasonable doubt as to whether the shot was fired with malice, they cannot convict defendant of murder in either degree.

(J) The law gives defendant the same right to protect himself from death or great bodily harm when an unprovoked attack is made on him at or near an illicit still, that he would have at or near a cornmill.

(G) If Will Tidwell went up to the still, and without fault on the part of Hill grabbed a rifle and knocked Hill down, and then attempted to shoot him with said rifle, and thereby led defendant honestly to believe that his life was in danger, or that he was in danger of great bodily harm, he had the right to shoot Will Tidwell, and the law would hold him guiltless.

W. J. BOYKIN, and CULLI & MARTIN, for appellant.

W. L. MARTIN, Attorney General, and W. H. MITCHELL, Assistant Attorney General, for the State.

THOMAS, J.—Appellant was convicted of murder in the first degree, and sentenced to the penitentiary for life.

(1-3) On the trial many questions were sought to be raised on the admission of evidence. To the testimony of witnesses Ed., Elsie, and T. H. Hatfield, and D. D. Depositer, the defendant did not object before answer. After answer, motion made to exclude cannot put the court in error for admitting testimony responsive to the question.—*Pope v. State,* 168 Ala. 33, 53 South. 292; *Downey v. State,* 115 Ala. 108, 22 South. 479; *Rutledge v. Rowland,* 161 Ala. 114, 49 South. 461;

[Hill v. The State.]

*Kramer v. Compton,* 166 Ala. 216, 221, 52 South. 351; *Sharp v. State,* 193 Ala. 22, 69 South. 133. If objection had been seasonably made to the questions before answer, in this case, the condition of the body of deceased was properly shown to the jury, on the questions, identity of the deceased, length of time the body had been concealed, and how it had been concealed, as shedding light on the corpus delicti.—*Sharp v. State, supra,* At the time of the introduction of this testimony, the defendant had made no confession that he had killed the deceased, and its subsequent admission could not put the court in error.

(4) The remark of the solicitor in the hearing of the court and the jury that, "It is a horrible thing to relate, I know," was promptly repudiated by the court as "an improper remark;" the court adding that "the jury will not consider it." It is to be regretted that one clothed with the power of prosecution for the state should make improper remarks before the jury, yet the prompt and decisive reproof, in this case, by the court, followed up by the exclusion of the offensive remark from the jury, was sufficient to render harmless the statement complained of.

(5) The acts, declarations, and conduct of the accused, against interest, are always competent. At the coroner's inquest, before defendant was arrested, his conduct with reference to the investigation as well as his selection of the coroner's jury was a circumstance, against interest, properly admitted for the consideration of the jury. There was no error in permitting witnesses Depositer and Hatfield to testify as to what defendant did in selecting the coronor's jury.—7 Mayf. Dig. 312; *Maddox v. State,* 159 Ala. 53, 48 South. 689; *Miller's Case,* 107 Ala. 40, 19 South. 37; 4 Enc. Dig. of

[Hill v. The State.]

Ala. Rep. p. 184, § 258; *Blount's Case*, 49 Ala. 381; *McManus' Case*, 36 Ala. 292; *Reeves v. State*, 96 Ala. 33, 11 South. 296; *Pate v. State*, 94 Ala. 14, 10 South. 665; *Henry v. State*, 79 Ala. 42; *Armour's Case*, 63 Ala. 173; *Johnson v. State*, 17 Ala. 623.

(6) The witness Mrs. Tidwell, the wife of the deceased, had testified to the conduct of the defendant shortly after she heard the two shots fired on the mountain, in the direction of the still, and of his coming from that direction and going to his home; and on cross-examination the witness stated she never said anything about this conduct of the defendant for there was nobody else there to talk to, whereupon the defendant asked the question, "Nobody else?" and the witness answered, "I seen Mr. Hill's wife, I would walk up and down the road and sing." The defendant made no motion to exclude this statement of the witness, but asked the question, "When was it she would sing?" Witness answered: "During the time Mr. Hill was missing from home. I would walk up and down the road and cry and take on, and she would walk up and down the road and sing." Then the defendant asked the witness the question, "Don't you know Mrs. Hill was expecting to be confined at that time?" to which the witness replied, "She was in no worse shape than I was, if she was." Here the solicitor objected, and moved the court to exclude this evidence, and the court sustained the motion. There was no error of the trial court in sustaining the solicitor's objection and excluding this testimony. The answer of Mrs. Tidwell touching her conduct, and that of Mrs. Hill after the murder, would have been excluded on motion of the defendant. Defendant's failing to do this did not give him the right to proceed with a cross-examination introducing irrelevant testimony.

[Hill v. The State.]

(7) The defendant, as a witness in his own behalf, was properly not permitted to testify that he came to Attalla "intending to give up." Likewise the court properly refused to permit the defendant to testify that he and his mother were bothered, and that she advised him to leave home; or to permit the witness to testify that he did not want to leave home, or that he told other parties about it soon after the killing. All of this testimony tended to make evidence for the defendant.

The rules governing the introduction of testimony in criminal cases forbid the introduction in evidence of self-serving declarations and acts of the defendant, and the principle is sustained by a long line of authorities in this state.—*Oliver v. State,* 17 Ala. 595, to *Hill v. State,* 156 Ala. 3, 46 South. 864; *Williams v. State,* 105 Ala. 96, 17 South. 86. The declarations sought to be introduced did not come within the rule of *Goforth's Case,* 183 Ala. 66, 63 South. 8.

(8) The facts that the defendant had been "accused of selling liquor," and "that three indictments were pending against the defendant for running a still or selling liquor," were immaterial inquiries on his trial for murder. The court committed no error in sustaining objections to questions seeking to show these facts.

(9) The witness E. V. Hall testified for the defendant that he was at defendant's house on the day of the murder; that when defendant came he was bloody and dirty and had a gash across his head about an inch and a half or two inches long. It would have been improper for the court to permit the defendant to ask the questions, "What was he doing, was he crying or not, how about it?" and, "What did he, the defendant, do when he came to the house?" The witness had described the physical appearance of the defendant, the condition of

his clothing, and the nature and character of the wound across his head when he returned to his home after the homicide.

(10) There was no error in the refusal of the court, on motion of the solicitor, to permit witness Ramsey to give his reasons why his attention was attracted to the two shots. Witness had testified that he heard two shots; this was sufficient.

(11-13) When a witness has testified to the general reputation or character of the defendant, it is competent on cross-examination to test witness' knowledge of this reputation or character of which he did testify, by asking if he had not heard of specific acts of the defendant that tended to militate against his reputation or character.

There was no error in permitting the witnesses Ramsey and Malone to testify on cross-examination that they had heard of previous acts of the defendant tending to militate against his general reputation and good character in that neighborhood.—*Rutledge v. Rowland,* 161 Ala. 114, 49 South. 461; *White v. State,* 111 Ala. 92, 21 South. 330; *Lowery v. State,* 98 Ala. 45, 13 South. 498; 7 Mayf. Dig. 341. One Hatfield, as a witness, had testified to defendant's bad character, and, on cross-examination by the solicitor, was asked if he had not heard of certain specific acts of the defendant that tended to militate against the general character of the defendant; and, against the objection of the defendant, the witness was permitted to answer questions by the solicitor of the specific acts of which he had heard. It was competent for the defendant to test by cross-examination the knowledge of the witness of the general reputation or character to which the witness has testified. Such inquiries, however, should be confined to re-

[Hill v. The State.]

puted acts before the commission of the homicide. The witness having answered, the court properly limited the testimony, and on motion of defendant excluded the irrelevant and incompetent testimony that on re-examination was brought out by the solicitor. Thus, as far as practicable, was removed any unfavorable impressions which such evidence may have made; and the court clearly and explicitly instructed the jury to disregard it altogether.—*Watson v. Adams*, 187 Ala. 490, 65 South. 528; *Smith v. State*, 107 Ala. 144, 18 South. 306; *Western Union Tel. Co. v. Rowell*, 166 Ala. 651, 51 South. 880; *Jordan v. State*, 79 Ala. 12; *Carlisle v. Hunley*, 15 Ala. 623.

(14) Jim Sibert having testified as a witness for the defendant, the court properly permitted the state to impeach him as to truth and veracity.—1 Mayf. Dig. 890.

(15) The predicate being laid for the impeachment of the witness Hill, it was permissible to allow Cleve Hawkins to testify that, at the time and place indicated in the predicate, he had a conversation with the defendant, in which the defendant told witness that he killed the deceased below the still and dragged him 30 yards away, or words in substance to this effect. In response to the defendant's motion to exclude, the court inquired of the witness, "Did he say that, or about that in substance?" and upon the witness' reply, "Yes, sir," the court overruled the defendant's motion to exclude the answer of the witness.

In *Southern Ry. Co. v. Williams*, 113 Ala. 622, 21 South. 328, it was declared that the rule is not ironclad; that it does not require perfect precision as to either time, place, persons present, or the statement made. The predicate is sufficient when it is clear that

the witness is not taken by surprise, and is afforded ample opportunity to make any explanation desired, and is sufficient to authorize proof of contradictory statements.—2 Brick. Dig. 548. A proper predicate being laid for the introduction of the testimony, there was no error of the trial court in overruling defendant's objection and motion to exclude.—*Burton v. State,* 115 Ala. 1, 22 South. 585; *Southern Ry. Co. v. Williams, supra;* 1 Greenl. Ev. § 462.

(16) There was no error in the ruling of the court on the solicitor's objection to defendant's questions to the witness Vann . The witness was introduced by the defendant in rebuttal, and after he gave the rebuttal testimony counsel for the defendant asked, "Did you state to Hill that he had better watch Tidwell, or something of that kind?" The court sustained the solicitor's objection to the question and declined to allow counsel for the defendant to make such proof. The testimony was not in rebuttal, and was no more than the advice of the witness to the defendant. The court, however, allowed the witness to state that he told the defendant that the deceased was a dangerous and bloodthirsty man.

(17) The vice of refused charge B is that it sought to instruct the jury that the contradictory statements on the part of the defendant were admissible only to determine the weight to be given defendant's testimony. The charge was misleading in that the statements themselves, which are said to be contradictory, may carry evidential weight with the jury as to the facts disclosed by them.

(18-21) The court properly refused charges A, C, and I, requested by the defendant, for that the duty to retreat was ignored by these charges. It was a question

[Hill v. The State.]

for the jury, under all the circumstances, to determine whether or not the defendant could retreat without increasing his peril.—*Miller v. State,* 107 Ala. 40, 19 South. 37; *Abernathy v. State,* 129 Ala. 85, 29 South. 844; *Suell v. Derricott et al.,* 161 Ala. 268, 49 South. 895, 23 L. R. A. (N. S.) 986, 18 Ann. Cas. 636; *Carter v. State,* 82 Ala. 13, 2 South. 766; *Evans v. State,* 109 Ala. 11, 19 South. 535. Charge C pretermits a reasonable or bona fide belief by the defendant that his life was in danger. The apprehesion of danger must be bona fide and reasonable.—*Beasley v. State,* 181 Ala. 28, 61 South. 259. The defendant has proceeded on the idea that there was no duty of retreat by him, because the homicide occurred at the illicit distillery on the moutain, set up and maintained by the defendant and the deceased. Such a place of unlawful business will not be held to be a place of business from which those engaged are not required to retreat. The case relied on by appellant (*Stevens v. State,* 138 Ala. 71, 35 South. 122) is not authority to the contrary.

In the case of *People v. Rector,* 19 Wend. (N. Y.) 569, 591, where the defendant kept a bawdyhouse in the city of Albany, the question of the right of defense to one's castle was considered; and Mr. Justice Cowan said that it was proper to observe that, after the prisoner had given notice to the deceased and his companions to depart, his house was, in respect to them, a mere private one; and that in the eye of the law it was entitled to the same measure of protection as the house in *Meade's Case;* and that any further assault, therefore, or any apprehended assault, might be repelled upon the same principles controlling in that case.— *Meade's Case,* Lewin's Crown Cases, 184. *Meade's Case* is recited at large in Roscoe's Criminal Evidence, 644,

645 (Phil'a Ed.) 1836), s. c. (18 Ed.) pp. 805, 806. Meade was in his dwelling, at the nighttime, repelling a hostile attack by a band of smugglers and boatmen to whom he had become obnoxious for giving information on them to excise officials.

Mr. Wharton (Homicide [2d Ed.] § 547), discussing the defense of dwellings, says: "In 1873 the doctrine of *Meade's Case* was affirmed, it being expressly declared that the use of deadly weapons is admissible to divert apparently felonious assault on defendant or his household.—*State v. Patterson*, 45 Vt. 308 [12 Am. Rep. 200]."

The Vermont case thus cited by Mr. Wharton was where the defendant was living with his wife, mother, and sisters in a tenement house.

In *Pond v. People*, 8 Mich. 167, Mr. Justice Campbell, for the court, says: "A man is not, however, obliged to retreat if assaulted in his dwelling, but may use such means as are absolutely necessary to repel the assailant from his house, or to prevent his forcible entry, even to the taking of life. But here, as in the other cases, he must not take life if he can otherwise arrest or repel the assailant.—2 Bish. Cr. L., § 569; 3 Greenl. Ev. 117; Hawk. P. C., B. 1, c. 28, § 23. Where the assault or breaking is felonious, the homicide becomes justifiable, and not merely excusable."

In *Storey v. State*, 71 Ala. 337, Mr. Justice SOMER-VILLE cites the authorities above referred to, as supporting the statement that: "Where one is attacked in his own dwelling house, he is never required to retreat. His house is his castle and the law allows him to protect its sanctity from every unlawful invasion."

In *Jones v. State*, 76 Ala. 8, 16, the killing was in defendant's barroom, of which the deceased had charge

or in which he had an interest at the time of the killing; and it was declared an admitted doctrine of our criminal jurisprudence that, when a man is attacked in his own house, he is not required to retreat further. The reason of the rule is said to be that the law regards a man's house as his castle, or, as was anciently said, his tutissimum refugium, and, having retired thus far, he is not compelled to yield further to his assailing antagonist.—*Brinkley's Case*, 89 Ala. 34, 3 South. 22, 18 Am. St. Rep. 87; *Hutcheson v. State*, 170 Ala. 29, 54 South. 119.

The question was again considered in *Suell v. Derricott et al.*, 161 Ala. 259, 273, 49 South. 895, 23 L. R. A. (N. S.) 986, 18 Ann. Cas. 636, where Mr. Justice MAYFIELD restated the rule as being that a man's house is his castle for purposes of defense only; and, as has been said by this court, it cannot be turned into an arsenal of offense. While one's house formerly meant his home, his dwelling, the rule has also been extended to one's place of business or his place of refuge; consequently a man's place of business must be regarded pro hac vice his dwelling. He has the same right to defend it against intrusion, and is under no more necessity of retreating from the one than from the other; his duty to defend one is the same as it is to defend the other.

In *Watts v. State*, 177 Ala. 24, 32, 59 South. 270, 273, the doctrine of retreat in one's dwelling was again stated: "Had the evidence showed that defendant went into this room and was there attacked by his wife, the case might be different, and it may be that a due regard for the sacredness of human life would require a qualification of the principle announced in *Jones v. State*, and *Hutcheson v. State*, *supra*, to the extent that

those occupying separate rooms under a common roof should be held to the duty of retreating each to his own quarters, * * * rather than to stand there and kill, if such retreat might reasonably avoid the necessity of killing and offer safety to the one assailed."

The evidence showed that the husband and wife had taken separate rooms of the same house as dwelling places.

In *Walsch v. Call*, 32 Wis. 159, 161, the court was construing a statute of exemption of the stock "in trade or business;" and the expression was held not to embrace the stock in trade for carrying on the business of selling intoxicating liquors contrary to law. In the *Walsch Case* the familiar principle was applied that the credit sales for an unlawful business cannot be collected by law for the reason that the law will not permit its machinery to be used in aid of an outlawed business. —*Melchoir v. McCarty*, 31 Wis. 252, 11 Am. Rep. 605. If the person so engaged in an unlawful business would not be protected in his illegal credit sales, it will not be held that if, while operating or conducting this unlawful business, he is attacked (this illegal business place not being his dwelling house), he has the same right to stand and defend that he would have in his dwelling house or house used in the conduct of a lawful business. The unlawful business house or place, and its keeper or maintainer, are for the time not protected by the special right of defense of the castle.

By reason of the rule in each case, of defense of the castle or place of business, the right to stand and defend against unlawful invasion must be held to attach to a place that at the time is a dwelling house or house where the owner conducts a lawful trade or business. The fundamental principle of all the cases on this subject is the right of "the castle," and the rule is not ex-

tended to the protection or defense of a house where the then occupant has no legal right to be. Thus, such unlawful occupant has no higher, or more special, right of defense than that extended to him in a public thoroughfare or in his wood or field.

(22). Refused charge D was embraced in given charges 14, 18, 19, and 25. The law requires retreat if it is reasonably apparent that it can be done without increasing the danger. The charges seek to erroneously declare the rule of retreat to be inability to retreat with safety.

(23, 24) Charges E, F, and H, requested by the defendant, were misleading. The refusal of charge H may be further justified on the use of the word "or" instead of "of," as rendering the charge meaningless or likely to be misunderstood by the jury.—*Todd's Case*, 13 Ala. App. 301, 69 South. 325.

(25) Charge J was properly refused, as being argumentative, and as stating no proposition of law on which the defendant had the right to request the court to instruct the jury.

The defendant had the benefit of a proper instruction in given charge 5, which charged that the fact that defendant was engaged in the operation of a still should not be considered by the jury for any purpose in ascertaining his guilt or innocence.

(26, 27) There was no error in the refusal of charge G. It predicates the right of the defendant to kill the deceased on freedom from fault, and on defendant's honest belief that his life was in danger, or that he was in danger of grievous bodily harm. This is an incorrect statement of the rule. A man has not the right to take life on the ground alone that he honestly believes his life is in danger, or on the ground that he was free from fault in provoking the difficulty. Either fact may

be true, yet the circumstances may be such that it is the duty of the assailed to retreat, and within his power to do so without increasing his peril. The circumstances at the time of the homicide must not only be such as to induce the reasonable belief, or belief in the mind of a reasonable man, that there is imminent peril to life or limb and that retreat cannot be resorted to without increasing the peril, but must actually induce this reasonable belief in the mind of the slayer.

The court has several times stated the conditions of apparent necessity which will excuse, under the doctrine of self-defense, in homicide cases; and these are: (1) That the defendant must have entertained an honest or bona fide belief in the existence of necessity; and (2) the circumstances surrounding him, at the moment of the fatal shot or the delivery of the blow that caused the death of the deceased, must have been such as to impress a reasonable man, under the same circumstances, with the belief of his imminent peril and of the existence of an urgent necessity to take the life of his assailant as the only apparent alternative of saving his own life, or himself from grievous bodily harm. —*Jones v. State,* 76 Ala. 17; *Storey v. State,* 71 Ala. 329; *Matthews v. State,* 192 Ala. 1, 68 South. 334; *Carroll v. State,* 12 Ala. App. 69, 68 South. 530. Refused charge G fails to state the rule, and, moreover, singles out and gives undue prominence to a part of the evidence. It was properly refused. The defendant, however, in given charges 19 and 26, had the benefit of the instruction sought in charge G.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.