(82 South. 192)

**BIGHAM v. STATE. (6 Div. 875.)**

(Supreme Court of Alabama. May 15, 1919.)

**1. HOMICIDE ⬤➡313(1) — VERDICT — DEGREE.**

Under Code 1907, § 7087, the jury in a homicide case must find the degree of the offense.

**2. CRIMINAL LAW ⬤➡1114(1)—APPEAL—REVIEW.**

From a conviction of murder the Supreme Court should, under Code 1907, § 6264, examine the record and consider all questions apparent on the record or reserved by bill of exceptions.

**3. WITNESSES ⬤➡388(2), 389 — IMPEACHMENT—PREDICATE.**

The liability of a witness to be impeached by proof of previous declarations contrary to his testimony at trial cannot be avoided merely because he says he does not remember the statements about which he is interrogated, but before a witness can be impeached by such proof proper predicate must be laid.

**4. WITNESSES ⬤➡388(10) — IMPEACHMENT — PREDICATE.**

The inquiry intended as a predicate for impeachment of a witness by proof of a contradictory statement should specify the time, place, and person to whom statement is claimed to have been made; hence a question whether a witness who testified as to the shooting did not have a conversation with a named person in which he detailed to him the number of shots that were fired is not sufficient as predicate.

**5. HOMICIDE ⬤➡118(1)—DUTY TO RETREAT.**

One must retreat rather than take the life of another unless he would thereby increase his peril or it reasonably appeared that his peril would thereby be increased.

**6. CRIMINAL LAW ⬤➡450—EVIDENCE—CONCLUSION OF WITNESS—JURY QUESTION.**

In a homicide case objection was properly sustained to the question as to whether it was very rough on one side of the place where the killing occurred and whether it would have been possible for a man to get out on that side; for this was a conclusion which the jury might draw from the statement of facts.

**7. HOMICIDE ⬤➡193 — EVIDENCE — POSSESSION OF WEAPONS BY DECEASED.**

In a prosecution arising out of the killing of the sheriff who, with revenue officers, was raiding an illicit still, a question as to the kind of a gun the sheriff had in his office or at the jail on the morning of the day before he went to the scene of the killing called for irrelevant evidence.

**8. CRIMINAL LAW ⬤➡450 — WITNESSES — CONCLUSIONS.**

In a homicide case a question calling for the conclusion of a witness as to the location of the parties, which conclusion could be drawn by the jury from the testimony, is objectionable.

**9. HOMICIDE ⬤➡170 — EVIDENCE — ADMISSIBILITY—PRESENCE OF ACCUSED.**

In a prosecution for homicide, the state may show defendant's proximity to the scene of the homicide on the night or the morning of the day it occurred.

**10. HOMICIDE ⬤➡158(3) — THREATS — EVIDENCE—ADMISSIBILITY.**

Where a sheriff was killed while raiding an illicit still, evidence that defendant in conversation with others stated he would kill any one who attempted to raid the still is admissible.

**11. WITNESSES ⬤➡363(1) — IMPEACHMENT — BIAS.**

It is competent to show the interest or bias of a witness as tending to affect his credibility.

**12. WITNESSES ⬤➡372(2) — IMPEACHMENT — BIAS—CROSS-EXAMINATION.**

In a homicide case arising out of the killing of a sheriff in a raid on an illicit still, objection was properly sustained to question whether a witness was on friendly terms with some of the "fellows," and whether or not he had not testified against some of them.

**13. WITNESSES ⬤➡240(4) — EXAMINATION — LEADING QUESTIONS.**

A question whether there were indictments against a number of "fellows up there," asked of witness in a homicide case arising out of the killing of a sheriff in a raid on an illicit still, is objectionable as leading.

**14. WITNESSES ⬤➡372(2) — BIAS — CROSS-EXAMINATION.**

In a homicide case, where one of the state's witnesses had denied that he had been indicted for assisting a convict to escape, a question whether there were indictments against a "number of fellows in the vicinity" was objectionable, as failing to identify persons against whom indictments were pending or to show how they were related to the defendant in the case, as the fact that others were indicted for escape did not impute bias or interest to the witness.

**15. WITNESSES ⬤➡345(2), 350 — CROSS-EXAMINATION—CREDIBILITY.**

In a prosecution arising out of the killing of a sheriff in a raid on an illicit still, it was competent for defendant to show that the state's witness had been indicted in connection with the homicide or operation of the still, but the question, "You haven't been charged with being down at the still when Mr. W. came down there to arrest these fellows?" was not competent.

**16. WITNESSES ⬤➡372(2) — BIAS — CROSS-EXAMINATION—CREDIBILITY.**

In a homicide case arising out of the killing of a sheriff in a raid on an illicit still, where one of the state's witnesses who was under arrest by officers searching for the still thus explained his presence on the occasion of the homicide, and that he was not voluntarily engaged in the search, and that he had no interest in the conviction or acquittal of defendant, the question whether he pointed out the location of the still was relevant as shedding light on his bias or lack of it.

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

17. CRIMINAL LAW ☞380 — DEFENDANT'S FORMER CONVICTION — EVIDENCE — ADMISSIBILITY.

In a prosecution for homicide, evidence that defendant was not 'believed guilty of an offense of which he had been formerly convicted and imprisoned was immaterial, and it was proper to exclude such evidence and that there was no attempt to retake defendant after escaping from the penitentiary.

18. HOMICIDE ☞191 — EVIDENCE — ADMISSIBILITY.

In a prosecution arising out of the shooting of a sheriff in a raid on an illicit still, testimony that he had been in the neighborhood on a previous occasion looking for deserters from the army was properly excluded, having no relation to the raid on the still.

19. HOMICIDE ☞174(1, 7) — EVIDENCE — ADMISSIBILITY.

In a prosecution for homicide, a question to defendant as to whether anybody tried to keep him from leaving, if referring to his movements after the homicide was properly excluded, and if referring to his escape from the penitentiary, was immaterial.

20. HOMICIDE ☞174(7) — WITNESSES ☞277(2) — EVIDENCE — FLIGHT — CROSS-EXAMINATION.

In a prosecution for homicide, it was proper to allow the state to show flight after the killing, and for that purpose to cross-examine defendant and have him detail his immediate and subsequent movements thereafter.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Dock Bigham was convicted of murder in the first degree, and he appeals. Affirmed.

F. F. Windham, of Tuscaloosa, for appellant.

J. Q. Smith, Atty. Gen., and Horace Wilkinson, Asst. Atty. Gen., for the State.

THOMAS, J. The defendant was convicted of murder in the first degree, and his punishment fixed by the jury to suffer death. The homicide was committed by defendant at the place of operation of an illicit distillery. The deceased was the sheriff, and, at the time of his death, was of a posse of state and federal officials seeking to locate such plant and to arrest those who were operating it, one of whom was the defendant.

The due preliminary orders, of arraignment, for venire, and setting a day for defendant's trial are disclosed by the record; so also a proper verdict ascertaining defendant's guilt of murder in the first degree and fixing his punishment therefor, and judgment and sentence as required by law.

[1] The several degrees of a felonious homicide and the required elements of self-defense—defendant's plea in justification of his act in killing deceased—were defined by the court in the oral charge (Hill v. State, 194 Ala. 11, 69 South. 941), and all of defendant's requested written charges were given. The jury, under the indictment charging murder in the first degree, ascertained by their verdict, and so declared, that the defendant was guilty of murder in the first degree and fixed his punishment at death. Code, § 7087; Howerton v. State, 191 Ala. 13, 67 South. 979.

[2] We have examined the record, and considered all questions apparent on the record or reserved by bill of exceptions. Code, § 6264; Howerton v. State, supra; Johnson v. State, ante, p. 30, 81 South. 820; Hardley v. State, 202 Ala. 24, 79 South. 362.

On the trial several exceptions were reserved to the admission and rejection of evidence. It would subserve no good purpose to discuss exceptions which are patently without merit.

[3, 4] The state introduced as a witness one Robertson, who testified that he went in company with the deceased, Watts, and others to the place where the homicide occurred, and that he did not know defendant was one of the parties operating the still. He described the locus in quo, stating that he was instructed by Watts to pursue a man who was fleeing therefrom, and that in the pursuit he (witness) fired his gun two or three times; that after he fired, hearing "several shots down in the hollow to where the still was," he turned and went to Watts, and found him in a stooping position, "like a man sinking," or leaning over toward a little poplar tree; that when witness looked "up the hollow, I [he] saw a gun leveled" on him, which was fired, striking him in the shoulder. Witness further testified that later he repaired to the scene of the homicide, examined "the tree carefully and saw buckshot holes in it"; that he went to the still in the direction of where these buckshot holes were in the tree, and they were right in line with the still; that there were twigs and bushes between the still and the tree, and they were cut by bullets; that the twigs and bushes were on a direct line between the still furnace and the tree, between the top of the still furnace and the tree; that it was "the same tree Mr. Watts was hunkered up against." Brindley v. State, 193 Ala. 43, 45, 46, 69 South. 536, Ann. Cas. 1916E, 177.

On cross-examination witness testified that he shot two or three times in the direction of the man coming across the field, and that at that instant he heard shooting "in the hollow," but could not say how many shots there were, stating his best judgment to be three or four shots; that the shooting was from a high-powered gun with a bigger explosion than a pistol. Counsel for defendant propounded to witness the question, "Didn't you have a conversation, shortly after this

occurrence with Mr. Henry King and detail to him what took place and the number of shots that were fired, and so forth, and didn't you tell him the same thing?" The witness replied that he did not remember talking with Mr. King, "unless you could refer me"; would not say that he did not have such a conversation; supposed that he had talked with the party, but didn't remember any time. Witness was then asked, "In that conversation you say you had with him did you detail to him or outline what happened?" and answered, "Could not say; I may have had a talk with Mr. King shortly after this happened, but don't remember, and don't remember detailing what happened or the number of shots fired." The foregoing was without objection. Counsel for defendant thereupon asked the witness, "Did you, in the city of Tuscaloosa, shortly after this occurrence up there in which Mr. Watts was killed, have a conversation on the·afternoon of the day that Mr. Watts was killed, or shortly thereafter, did you have a conversation with Mr. Henry King detailing to him the number of shots that were fired?" The solicitor objected to the question on the ground that it was irrelevant and immaterial; that the predicate was not in proper form; and that the same question had already been propounded to the witness and answered by him. The court stated that substantially the same question had been asked and answered; that this was all right as a preliminary question, but not in proper form for predicate upon which to contradict witness; that, if it was asked merely as a preliminary question, it was permissible, but, if it was intended as the predicate upon which to contradict witness, it was not in proper form. To this ruling the defendant then and there duly and legally excepted.

The liability of a witness to be contradicted may not be avoided merely because he says he does not remember the statements about which he is interrogated or that he "does not remember whether he said so or not." Payne v. State, 60 Ala. 80; Brown v. State, 79 Ala. 61; Henson v. State, 120 Ala. 316, 25 South. 23; Crowley v. Page, Car. & P., 789, 791. In order to impeach a witness by proving his contradictory statements, a proper predicate is required. In People's Shoe Co. v. Skally, 196 Ala. 349, 355, 71 South. 719, 721, Mr. Justice Mayfield said:

"In order to impeach a witness by contradictory statements, a predicate is required to prevent surprise and give the witness an opportunity to explain. If the attention of the witness is called to the time and place, circumstances and persons involved, and the statements made, the rule is satisfied. It does not require a perfect precision as to either. Southern Railway Co. v. Williams, 113 Ala. 620, 21 South. 328. See Carlisle v. Hunley, Ex'x, 15 Ala. 623; Lewis v. Post, 1 Ala. 65; State v. Marler, 2 Ala. 43, 36 Am. Dec. 398; Powell v. State, 19 Ala. 577; Nelson v. Iverson, 24 Ala. 9, 60 Am. Dec. 442."

In effect, this is the rule long obtaining in English and American courts, and announced by Baron Parke in Crowley v. Page, supra; 2 Phillips on Ev. (3d Ed.) c. 9, § 3, pp. 434, 435. The text to 1 Greenleaf on Evidence (16th Ed.) § 462, is:

"It is not enough to ask him the general question whether he has ever said so and so, nor whether he has always told the same story, because it may frequently happen that upon the general question he may not remember whether he has so said; whereas, when his attention is challenged to particular circumstances and occasions, he may recollect and explain what he has formerly said. This course of proceeding is considered indispensable, from a sense of justice to the witness; for, as the direct tendency of the evidence is to impeach his veracity, common justice requires that, by first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statement already given, as well as by a re-examination to explain the nature, circumstances, meaning, and design of what he is proved elsewhere to have said."

On the authority of Southern Railway Co. v. Williams, 113 Ala. 620, 21 South. 328, the author further says:

"The inquiry of the witness to be discredited must specify, it is usually said, the time, place, and person (addressee) of the supposed inconsistent statement; but the fixing of this specified form is to be deprecated, for it leads to innumerable petty technicalities; in principle and in policy, the inquiry need merely state enough fairly to recall the statement to the witness' mind if he has made it."

In Hill v. State, 194 Ala. 11, 21, 69 South. 941, 945, it is said that—·

"The rule is not ironclad; that it does not require perfect precision as to either time, place, persons present, or the statement made. The predicate is sufficient when it is clear that the witness is not taken by surprise, and is afforded ample opportunity to make any explanation desired, and is sufficient to authorize proof of contradictory statements. 2 Brick. Dig. 548." Ex parte Phillips, 188 Ala. 57, 59, 66 South. 3.

The predicate sought to be laid for impeachment of Robertson by Mr. Henry King did not comply with the rule, since by reference to the examination of the witness, it was not clear that he was not being taken by surprise, for the witness said to the interrogator, "I don't remember, unless you could refer me." The patent defect of the predicate, however, was that it failed to give the witness ample opportunity to make the explanation desired as to the statement alleged to have been made by him to Mr. King at the time and place in question, of how many shots (he told King) were fired on the occasion of the homicide.

[5, 6] One must retreat rather than take

the life of another unless he would thereby increase his peril, or it reasonably appears that his peril would be thereby increased. There is no merit in the exception for refusal of the court to permit witness Robertson to answer the question, "I believe you just stated it was very rough on the other side; it would be almost impossible for a man to have gotten out on the other side?" This was a conclusion the jury could draw from a statement of the facts, which witness was properly permitted to detail. 1 Mayfield Dig. p. 804, subd. 55.

[7] The kind of gun deceased had in his office in Tuscaloosa, or in the jail, "on the morning of the day before he went" to the scene of the homicide, was irrelevant evidence. On sustaining the solicitor's objection the court stated that, if the relevancy was shown, it would be permitted. The witness was then permitted to answer, "I don't know." Witness, however, had testified that Watts carried a rifle and a pistol from the jail when he set out for the scene of the homicide.

[8] There is no merit in the exception to the court's refusal to permit the witness Draper to answer the question, "If he had been standing over behind the tree, he would not have been shot as he was shot?" Such question sought by the answer to draw the inference that the jury should have drawn from testimony tending to show the location of the parties at the time of the shooting.

[9, 10] It was competent for the state to show the proximity of the defendant to the scene of the homicide on the night or morning of the day on which the same occurred, and that defendant was at the home of Kil Sellers at such time. So were properly given the names of the parties present when the conversation between the defendant and Kil Sellers occurred relative to the distillery and officers of the law who might come to interfere with its operation on that day. This testimony was further made material by the subsequent testimony of Pete Leonard (Standard Motorcar Co. v. McMahon, 82 South. 188;[1] McCoy v. Watson, 51 Ala. 466; Belmont Co. v. Smith, 74 Ala. 206; La Fayette Ry. Co. v. Tucker, 124 Ala. 514, 27 South. 447), who was said by the witness Barnett to have been at Kil Sellers' house on the night in question. The conversation was between Sellers and the defendant in Barnett's and Leonard's presence when the latter was said by Barnett and Leonard to have made a threat against any officials interfering with his conduct of the illicit distillery the day of the homicide. Sharp v. State, 193 Ala. 22, 69 South. 122, and authorities collected on this point.

[11, 12] It is competent to show the interest or bias of a witness, as tending to affect his credibility. Patton v. State, 197 Ala. 180, 72 South. 401. The fault of defendant's question, "You are not on very friendly terms with some of these fellows?" is that it did

not fix the names of the persons or the class of persons with whom the witness was on friendly terms. Like observation may be made of the question, "You went up to Birmingham and testified against a bunch of these fellows?" If it had been shown that the parties against whom the witness Barnett testified in Birmingham were associates of Dock Bigham in the illicit distillery, or that of a class charged and being prosecuted for conducting a like illicit enterprise, the testimony should have gone to the jury for consideration, as shedding light on the credibility of Barnett as a witness.

[13, 14] When Pete (Melt) Leonard was introduced as a witness by the state, he testified that Kil Sellers and the defendant Dock Bigham were related by marriage, and told of the occasion (the morning before the homicide when defendant came to Sellers' house at 4 o'clock) when the conversation ensued between said parties and Dock Bigham, who said that, if they would watch, he (Bigham) "would go down there and run it off (the beer), and that the first man that came in there he would kill him if he was an officer." Witness was asked by defendant's counsel if indictments had not been preferred against him for aiding an escaped convict, and answered in the negative. Whereupon counsel asked the witness, "There are [indictments] against a number of fellows up there?" to which the court properly sustained objection. The question was not only leading, but failed to identify the persons against whom such indictments were pending, and how such persons were related to witness or to defendant. The fact that other persons were indicted for an escape did not impute bias or interest to the witness.

[15] It would have been competent for defendant to have shown by the state's witness Leonard that he was indicted in connection with the homicide or with the operation of the distillery on that occasion; but the question, "You haven't been charged with being down at the still when Mr. Watts came down there to arrest these fellows?" was not competent. Patton v. State, 197 Ala. 180, 182, 72 South. 401; Hill v. State, supra, 194 Ala. 19, 69 South. 941; Wilson v. State, 73 Ala. 527, 532.

[16] The testimony that state's witness Jesse Clements was under arrest by the officers searching for defendant's still explained his presence on the occasion of the homicide, and that he was not voluntarily engaged in the search resulting in the death of Palmer Watts. The witness said:

"This is the way I came to be with Mr. Smith: Mr. Smith and Draper were revenue officers, and Mr. Watts was the sheriff of the county, and they had me under arrest. * * * I have no interest in the conviction or acquittal of Dock Bigham, nor was I aware at that time that Mr. Bigham is said to have been engaged in the unlawful manufacture of liquor when he killed Mr. Watts."

[1] Ante, p. 158.

The state then asked the witness if he did not inform those officials of the location of the still in question, and was permitted to answer, over defendant's objection, "No, sir." Under such negative answer the inquiry was relevant as shedding light on the bias, or lack of it, on the part of the witness.

[17] The irrelevant statements of the fact that state authorities did not try to apprehend defendant after his escape from the penitentiary was properly not permitted to be given in evidence by the witness Tom Sellers, or by defendant's statement that he "walked off" from the penitentiary, and that no one sought to restrain him. The "general belief" of defendant's innocence of the crime for which he was formerly convicted and imprisoned (if such had been a fact) was foreign to the issue being tried.

Defendant's witness Babe Swindle testified as to the officers coming to the Swindle house and going therefrom in the direction of the still; that a short while thereafter witness heard shooting, four or five shots like a pistol or rifle, then a shotgun and two pistols; that two guns were brought out of the woods after the occurrence, and that "Verner had a pistol and Watts' pistol and rifle." It was immaterial "who commanded that pistol to be taken out of" the car door pocket. It was shown in evidence that firearms were carried from the place of the homicide, of which were the pistol and rifle belonging to deceased.

[18] There was no error in excluding the evidence sought to be introduced by defendant tending to show that the deceased officer was in the neighborhood of the still or of Sellers' house, "looking for deserters on a former occasion." So far as the evidence discloses, such act of that officer would have no relation to the attempted arrest of defendant resulting in Watts' death.

[19] The question sought to be propounded by his counsel to defendant, "Anybody try to keep you from leaving?" if referred to defendant's movements after the homicide, was properly excluded; if referred to his escape from the penitentiary, it was immaterial inquiry on defendant's instant trial for murder.

[20] The state was properly permitted to show flight after the homicide, and, in the attempt by cross-examination of defendant, to have him detail his immediate and subsequent movements. Hill v. State, supra; Johnson v. State, ante, p. 30, 81 South. 820; Goforth v. State, 183 Ala. 66, 63 South. 8.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SAYRE, SOMERVILLE, and GARDNER, JJ., concur.