107 So.2d 913

Leonard KENNEDY

v.

STATE.

8 Div. 398.

Court of Appeals of Alabama.

Dec. 2, 1958.

Rehearing Denied Jan. 6, 1959.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

Pilcher & Floyd, Gadsden, for appellant.

**680**

CATES, Judge.

Leonard Kennedy was tried to a jury in the Marshall County Circuit Court on a consolidated case involving four distinct charges: (1) possessing prohibited liquors (Code 1940, T. 29, § 98); (2) resisting an officer of the law while acting in the line of duty (Code 1940, T. 14, § 402); (3) leaving the scene of an accident involving the automobile driven by him without stopping to give his name, address, etc. (Act No. 427, approved July 9, 1945, Gen.Laws 1945, p. 670); and (4) driving a motor vehicle while under the influence of an intoxicating liquor (T. 36, § 2, as amended).

Kennedy stands convicted of the first three charges and has appealed from the separate and several judgments adjudicating him guilty of those offenses.

The case made out by the State is as follows:

On the night of July 3, 1957, the high sheriff of Marshall County, along with two of his deputies, were in a parked car on a rural road near the intersection of another thoroughfare when an Oldsmobile driven by Kennedy came around a curve too far toward the outside and sideswiped the sheriff's car.

Kennedy stopped some sixty yards down the road, had his car door open and one foot on the ground as though to get out when, looking back, he evidently recognized the deputy, Mr. I. E. Massey, who said, "Hold it Leonard." Whereupon, Kennedy drove off.

The deputy shot at the tires of Kennedy's car. While we cannot approve this conduct in the face of a misdemeanor violation, it has no bearing on our consideration of this case, since to give it effect to justify any action on Kennedy's part would be merely allowing two wrongs to make a right. Moreover, upon a grand jury indictment leaving the scene of an accident in violation of the 1945 Act, supra, may be punished either as a misdemeanor or as a felony.

The other deputy turned the sheriff's car around and the party proceeded to chase Kennedy some four or five miles through the countryside. At one point, Kennedy was observed opening the door on the right-hand side of his car whereupon a container fell from his car. The chase continued until Kennedy suddenly slammed on his brakes, attempted to make a left turn into a narrow lane, and the sheriff's automobile ran into the rear of the Oldsmobile.

The sheriff then got out and told Kennedy he was under arrest. With that, Kennedy commenced fighting the sheriff, and the two deputies came to his assistance. The three succeeded in subduing the obdurate Kennedy in short order.

A return along the route of flight disclosed that the cardboard carton which fell out of Kennedy's car during the chase contained several pints of whiskey and at least one pint of vodka.

One of the deputies, Hubert Hipp, testified as follows:

"Q. When you stopped to pick up the whiskey did anybody say anything about that having come out of his car? A. Yes. The Sheriff did.

"Q. The Sheriff made the statement to Mr. Kennedy that was what came out of his car? A. Yes, sir.

"Q. Did Mr. Kennedy deny it?

"Mr. Floyd: We object to that.

"The Court: Overrule.

"Mr. Floyd: We except. Incompetent, irrelevant and immaterial. Mere silence on the part of the defendant does not—

"The Court: Not. It is not a confession. I will let him answer that.

"Mr. Floyd: We except to it.

"Mr. Moore: When a man is accused of a crime and sometimes silence—

"The Court: I have overruled the objection.

"Q. Did Mr. Kennedy deny having thrown it out?

"Mr. Floyd: We except and we object to that.

"A. No, he didn't deny it."

The maxim, "He who is silent gives the appearance of consent," is, analytically, merely a description of the defendant's reaction to an accusation.

■ A statement to which a man does not reply is not any evidence of the facts stated—the evidentiary fact is his *conduct* as he hears the statement. The admissibility of testimony of silence derives from the general principles of evidence—not being confined to criminal cases. It stems from the doctrine of implied admissions. See also Hill v. State, 194 Ala. 11, 69 So. 941, 2 A.L.R. 509. Wigmore mentions it as circumstantial evidence, § 292 (3rd Ed.). In the same work we find in § 1071:

"* * * It would seem to be better to rule at least that any statement made in the party's presence and hearing is receivable, unless he can show that he lacked either the opportunity or the motive to deny its correctness; thus placing upon the opponent of the evidence the burden of showing to the judge its impropriety. But the burden is in practice generally left upon the proponent to show that the requisite conditions existed; * * * *"—citing inter alia Raymond v. State, 154 Ala. 1, 45 So. 895, and contra Anderson v. State, 171 Miss. 41, 156 So. 645.

The ratio decidendi of the Raymond case, supra, is that the State may show (1) the hearsay accusatory statement, and then (2) the defendant's taciturn demeanor rather than vice versa being the required order of proof.

■ Though silence of the accused at a formal trial (or on commitment) cannot be used, e. g., Jones v. State, 30 Ala.App. 360, 6 So.2d 26; Moore v. State, 261 Ala. 578, 75 So.2d 135, yet, in other circumstances, where it would be one's duty or nature to speak and there is an opportunity to speak, silence is evidence, though slight in weight, Johnson v. State, 17 Ala. 618; Scott v. State, 249 Ala. 304, 30 So.2d 689.

■ The demeanor of the party must be such as to show an adoption of the adverse statement, e. g., Hill v. Bishop, 2 Ala. 320, where an estimate by a prospective tenant (before leasing) as to the cost of certain repairs made in the presence of the plaintiff-landlord could not go to the jury—"for it cannot be considered as an admission of their value."

■ "Silence, in the absence of a duty to speak, is not an admission," Jackson v. United States, 5 Cir., 250 F.2d 897, 900, a case where an F. B. I. agent had warned

**682**

the defendant that whatever she said might be used against her.[1] See also Helton v. United States, 5 Cir., 221 F.2d 338 (failure to offer explanation as to presence of marijuana not admissible in constructive possession case).

The enquiry as to whether or not a defendant's demeanor or conduct denotes acquiescence is for the jury. Thus, in Hicks v. Lawson, 39 Ala. 90, at page 93, the reporter, in relating the case at nisi prius, states that:

> "* * * The court overruled the objection of the defendant to the answer of said witness to said 8th interrogatory, and permitted the plaintiff to read said answer in evidence to the jury; but distinctly stated to the jury, at the same time, that they must not allow any weight or effect whatever to said answer, unless they were convinced from the whole evidence in the cause, in the first place, that the said statement of the said witness was in fact made to the defendant, and that it was made under such circumstances, and was of such a character as naturally called for a reply from him, and that the defendant was at the time in such a situation that he would probably respond to it, and that he did not respond to it; * * *"

The opinion expressly approved this practice.

The weight to be attached to the circumstance of silence ought not to be charged to the jury as the equivalent of a confession—certainly in such a stark form

as that held bad in Campbell v. State, 55 Ala. 80. See also Scott v. State, supra.

Whether or not the accused could hear and understand the accusation is generally a jury issue, Martin v. State, 39 Ala. 523; Vaughn v. State, 130 Ala. 18, 30 So. 669.

Here Kennedy was in the sheriff's car in the company of Hipp and the sheriff when confronted with the case of jettisoned liquor. We think, since he is accorded the right of cross-examination, he bore the burden of persuading the jury that the officers spoke too low or that he was deaf, drunk, or otherwise hindered from knowing what they said.

Moreover, other principles of admissibility lie in the factual environs of Kennedy's being confronted with the liquor. *First*, there was no proof until then as to what was in the box; and, while the corpus delicti of the possession existed beforehand, the ascertainment of what the box had in it partook of the res gestae. The purported disappointment of the defendant that all the bottles had neither become lost nor shattered had probative value. We distinguish Tillison v. State, 248 Ala. 199, 27 So.2d 43, and consider this event took place within the scope of the exception of the quoted excerpt from 22 C.J.S. Criminal Law § 667.

Thus, describing rather than defining res gestae (which strictly does not admit of a concise, settled meaning), we find Thomas, J., in Sexton v. State, 239 Ala. 287, 196 So. 744, 745, saying:

> charged) may be given in evidence, i. e., against him, for him, or for or against another. Rule 5, Archbold (33rd Ed.), § 632, p. 414.

1. The English Judges' Rules provide, among other things, that the warning of the police officer be that whatever the prisoner says (upon his being formally

" "* * * It embraces all facts which are relevant, explanatory, or illustrative of, or which give character to, or illustrate the character of, or which characterize the act or principal fact which was the subject of or for decision. * * * It also embraces all facts which are contemporaneous with such main fact or which constitute a part of the transaction and was spontaneous. * * *"

And the opinion quotes the following as the classic definition:

" * * * 'Whenever any act may be proved, statements accompanying and explaining that act made by or to the person doing it may be proved if they are necessary to understand it.' * * *"

 *Second,* the defendant's attitude toward the offense is shown: the State may bring out his demeanor before or after the crime (though he himself may be generally confined only to proof of the res gestae), Campbell v. State, 23 Ala. 44; Willingham v. State, 261 Ala. 454, 74 So.2d 241. Nor does this principle seem confined to homicide cases, vide Rountree v. State, 20 Ala.App. 225, 101 So. 325; Wilson v. State, 31 Ala.App. 560, 19 So.2d 777; Blakeney v. State, 31 Ala.App. 154, 13 So.2d 424, reversed on another ground 244 Ala. 262, 13 So.2d 430.

There was no error in the admission of this testimony.

 We are next brought to a consideration of the applicability of Code 1940, T. 29, § 125, which reads in part:

" * * * it shall be competent for the State to give in evidence the fact that the beverage * * * possesses the same color, odor, and general appearance, or the same taste, color and general appearance of a prohibited liquor or beverage, * * * and the fact that the beverage in question as above stated is of the same color, odor and general appearance or same taste, color, and general appearance as * * * shall constitute prima facie evidence that the beverage is * * * within the inhibition of the statutes of this state for the suppression of intemperance; * * *."

As a factual predicate, the defendant, in his brief here, contends:

"The only testimony in this case offered by the State concerning the liquid found was to the effect that one and only one of the officers present smelled of the liquid taken from the box and that it smelled like whiskey. The testimony of Officer Hipp was to the effect that it smelled like whiskey. There was no other evidence whatsoever as to the color, odor and general appearance of the liquid taken, or whether it contained any portion of alcohol. There was no evidence that the liquid possessed the same color, odor and general appearance or had the same taste, color and general appearance of a liquor prohibited by law. * * *"

The State, to refute this contention, cites the following from Mr. Hipp's examination in chief:

"Q. During your work as a law enforcement officer have you had occasion to observe bonded whiskey? A. Yes, sir.

"Q. The smell of it. Do you know the smell of it? A. Yes, sir.

"Q. Do you know the smell of white whiskey? A. Yes, sir.

"Q. Do you know the color of white whiskey? A. Yes, sir.

"Q. Do you know the color of bonded whiskey? A. Yes.

"Q. And the type of bottles and the way it is sealed? A. Yes, sir.

"Q. Did you smell of this whiskey? Was any of it broken? A. Yes, sir.

"Q. Did you smell of it? A. Yes, sir.

"Q. What was it? A. Whiskey.

"Q. Bonded or white whiskey? A. Bonded.

"Q. How much was in the container? Did you count it? A. Yes, sir.

"Q. Do you remember how much was in it? A. They was five half pints and four pints and one pint of Vodka.

"Q. How many were broken? A. I don't know. There was several broken."

This is direct evidence on odor and color.

The trial judge, in his oral charge, had given the following direction of law on the effect of § 125, supra:

" * * * From the point of view of the testimony, gentlemen, the law is that the State makes out a prima facie case as to the illegality of the prohibited liquors if they have proved to your satisfaction that the liquors complained of looked like or smelled like or tasted like the contraband liquors denounced by the statute. And, if they do that then there would be a prima facie holding that they were the liquors prohibited by statute and contrary to the law. That is a prima facie proof only and can be set aside by proper proof if they were not. But if there is no proof to the contrary then you could assume from that that they were the prohibited liquors that are against the statute that I have just informed you of." .

At the end of the oral charge, we find the following exception and oral supplementary instruction:

"Mr. Floyd: Judge, on the charge, on your charge of V. P. L. possession where you stated the state makes out a prima facie case if they prove the liquor tasted like, looked like or smelled like—

"The Court: Did I confine it to that? I believe you are right. I did. I see what you mean.

"Gentlemen, that portion of the charge in regard to the prima facie case where I said if you are satisfied that the liquor in question looked like, smelled like or tasted like prohibited liquor, I don't mean that's a prima facie case that he possessed it. I mean it is prima facie that it was that particular kind of liquor, that is, prohibited. The question of whether he has it in his possession is a question for you to decide and the burden is on the State to satisfy you of that beyond a reasonable doubt, as I said. If there was any confusion on that, I hope that will straighten it out.

"Mr. Floyd: I want to except to that additional charge as to the law making out a prima facie case. That's the only one."

The appellant claims that the characteristics listed in § 125 (i. e., color, odor and general appearance or taste, color and general appearance) must be shown jointly (at least as to one or other of the two groupings and not disjunctively); that is, the State must adduce either (1) color *and* odor *and* general appearance of a prohibited liquor, or (2) taste *and* color *and* general appearance thereof.

Appellant cites Spelce v. State, 17 Ala. App. 401, 85 So. 835, and Williams v. State, 30 Ala.App. 395, 6 So.2d 525, 526. The

latter is the well known case of the defendant found with some "peach mobley [probably for *mobby*] or whatever you call it"—a substance having alcohol in it—which the defendant claimed was a hog feed. The failure to prove it potable was fatal; see also Bevels v. State, 38 Ala.App. 198, 84 So.2d 382.

The opinion in the Spelce case, supra, recites:

"* * * a police officer of the city of Huntsville, without a warrant, went into the house, in the absence of the defendant, the wife and her maid being in the house attending their household duties, and found a small wooden keg in the hall between the kitchen and the other part of the house; this keg containing about a quart of something which, to the policeman, smelled like whisky. The contents were never examined other than by the smell. Neither the keg nor the contents were offered in evidence. The wife and maid both denied that the keg contained whisky, but said it was a water keg. The only connection shown between the keg and defendant was that he was the husband of the woman who owned the dwelling. * * *"

In Roughton v. State, 38 Ala.App. 17, 77 So.2d 666, flight, an object cast from a fleeing car, the odor of moonshine whiskey wafted through the air, and the discovery at the point of discard of a broken jug lying on wet soil, both soil and jug reeking also of moonshine whiskey were sufficient circumstances to make a prima facie case.

Classifying cases for the purpose of showing precedents is a difficult task particularly where the decisions so often depend upon the peculiar, if not unique, facts. Thus, the Spelce case where odor alone was not enough, at first blush, seems opposed to the Roughton decision.

The opinion in Wright v. State, 4 Ala. App. 150, 58 So. 803, 804, (that color alone is not enough to show whiskey) comports with common sense, and it further points out that, while color is not a sufficiently identifying trait, yet a statute using the same wording as is here pertinent was not meant to set up an exclusive rule of evidence as to how the State might show a prohibited liquor, e. g.:

"* * * The groups of fact mentioned by the statute—the evidences furnished by both the senses of sight and smell, or by the two senses of sight and taste—have some probative value on an inquiry as to whether a given beverage comes within the prohibited class. The isolated feature of the color of the beverage is not entitled to any such probative effect. * * *"
and

"* * * The statutory provision mentioned is a rule of circumstantial evidence. It was not, and is not, claimed that it undertakes to make the circumstances it mentions the only ones by which the character of the beverage sold may be proved. * * *"

Again in Gray v. State, 29 Ala.App. 568, 199 So. 255, flight, throwing away two bottles (one, "Green River"), and the "smell" of whiskey were sufficient.

We do not go into the question of whether or not, since Code 1940, T. 29, § 93, among other things, defines "whiskey" by name as a prohibited beverage, properly predicated opinion evidence that a beverage is "whiskey" suffices—see Newton v. State, 234 Ala. 91, 175 So. 563. Cf. "homebrew" cases, such as Grant v. State, 22 Ala.App. 475, 117 So. 1; Oliver v. State, 32 Ala.App. 85, 21 So.2d 704; Hendrix v. State, Ala. App., 96 So.2d 313[1]; Booker v. City of Birmingham, 23 Ala.App. 312, 125 So. 603; Grant v. State, 23 Ala.App. 54, 120 So. 465; Jones v. State, 31 Ala.App. 378, 17 So.2d

---

1. Ante, p. 155.

545; Wright v. State, 37 Ala.App. 689, 74 So.2d 727; and it should be borne in mind that § 1 of T. 29 must be construed in pari materia with § 93, where and to the extent pertinent, see Brown v. State, 32 Ala.App. 406, 26 So.2d 536.

There was a prima facie case made out that the contents of the bottles were prohibited liquors.

It would have been a better (though not required) practice for the State to have produced at least one of the unbroken bottles, since it would seem from Mr. Justice' Somerville's dictum in Husch v. State, 211 Ala. 274, 100 So. 321, the defendant may move for the production of evidence in the State's possession. On a whole consideration of the evidence, we hold the elements held sufficient in the Roughton case, supra, are more than met here.

■ A further specification of alleged error arose from the following on cross-examination of Kennedy:

"Q. Mr. Kennedy, isn't it a fact that during this July 4th holiday business was a little better than you thought it would be and you had to go get some more whiskey and you were on your way back home when you ran into the Sheriff and you saw who it was and then proceeded to out-run them, isn't that what happened?"

This question was objected to as highly prejudicial, citing 53 Am.Jur., Trial, § 98, which reads in part:

"* * * A conscious attempt by counsel to get before a jury matter which he knows to be incompetent evidence with a design and purpose of bringing such evidence to the attention of the jury and influencing them in his favor will constitute misconduct. * * *"

Without going into the latitude allowed on cross-examination, we consider there was no error because the defendant's answer was negative.

The complaint upon which the warrant for Kennedy's arrest was issued on the charge of resisting arrest reads in the charging part:

"* * * there is probable cause for believing and he does believe, that within twelve months before making this affidavit and in said county Leonard Kennedy, did resist an officer of the law while acting in the line of duty, contrary to law and, against the peace and dignity of the State of Alabama."

Code 1940, T. 14, § 402, reads in pertinent part:

"* * * Any person * * * who resists any lawful arrest, whether under process or not * * *"

■ Section 402 also makes an offense of knowingly and wilfully opposing an officer who serves a writ or process. From a reading of the section, it consists of two offenses. Where, as here, the charge is resisting arrest, it is not necessary to word the complaint in the language used in describing the other offense which relates to obstructing the service of a writ or process.

In Lewis v. State, 3 Ala.App. 133, 57 So. 1035, an indictment using the expression "did knowingly and willfully oppose and resist * * * an officer * * * in the lawful arrest of one Dave Robinson," was held sufficient on analogy to the Code form of indictment for obstructing an officer in the service of process.

■ Here the complaining affidavit charges, in effect, resistance to an officer while acting in the line of duty.

This allegation we do not consider to be sufficient to charge the statutory offense of resisting arrest. The common law offense of resisting process or arrest is that embraced in § 402, supra, iv Bl.Com. 129.

Indeed, the crime of obstructing an officer in the performance of his duties first appears as a distinct offense in England under the Offenses Against the Person Act of 1861. Russell on Crime (11th Ed.), 764, et seq. Apparently, theretofore the offense was treated as an assault or an assault and battery. See Wharton's Cr.Law and Procedure, § 362; 6 C.J.S. Assault and Battery § 84.

"* * * (It may be said in passing that although it seems to be common practice in Baltimore to include a count of assault on a policeman in assault indictments, we are not aware of, nor have we been referred to, any common law or statutory authority which establishes such a crime as distinguished from assault on anyone else). * * *" Roberts v. Warden of Maryland Penitentiary, 206 Md. 246, 111 A.2d 597, 598.

And in Woodworth v. State, 26 Ohio St. 196, under a statute proscribing that one "resist or abuse any sheriff," it was held not error to charge the jury "that to constitute the offense charged, of resisting an officer, it was not necessary that the officer should be assaulted, beaten, or bruised."

■ Accordingly, we hold that the complaint here is too broad in its terms to charge any offense under the statute. It is a familiar principle that statutory crimes ordinarily should be charged in the terms of the statute, particularly if the statute sets out the elements constituting the offense.

Here, instead of employing the phrase "resisted an arrest" as the statute sets forth, the State has substituted the expression, resisted an officer "while acting in the line of duty."

The words of the Court of Appeal of Florida (2nd Dist.) in State v. Brown, Fla. App., 101 So.2d 599, 602, are apt in this case:

"* * * If a word is substituted for one used in the statute, the State must see that the substituted word does not constitute a broader term than the word used in the statute. If so, the charge does not constitute a crime."

See also Sparrenberger v. State, 53 Ala. 481.

Under the English statute prohibiting assaulting a peace officer in the execution of his duty, a simple assault can be an included offense, and a separate count for such would not be required. R. v. Wilson (1955), 39 Crim.App.Rep. 12. See Archbold (33rd Ed.), § 1841 (15th Cum.Supp., September 1, 1958). It is to be noted, however, that the English form of particulars in the complaint ordinarily uses the word "assaulted."

In this instance, we are not willing to say that the complaint here also charged and apprised Kennedy of an assault or an assault and battery upon the person of the sheriff, since it uses only the word "resisted." We consider that the word "resisted" has a passive connotation as well as an active one, and may also be taken as co-extensive with the word "oppose," as in McAlpine v. State, 19 Ala.App. 391, 97 So. 612; see also Duncan v. Jones [1936] 1 K.B. 218.

■ Considering the fact that under our criminal procedure a prisoner is not entitled to a bill of particulars, we must hold that the complaint in this case not only failed to charge the offense of resisting arrest, but also failed to include any cognate offense, such as assault or assault and battery.

■ During the solicitor's closing argument, the transcript of testimony shows:

"Mr. Floyd: We object to that and move to exclude that. Just a minute, Mr. Moore. About selling whiskey.

"Mr. Moore: That's a reasonable inference. We can argue that.

"The Court: Overrule.

"Mr. Floyd: We except and ask for a mistrial. The minds of the jurors will be prejudiced by his argument.

"The Court: Overrule."

In Barnes v. State, 34 Ala.App. 183, 38 So.2d 21, 23, we find:

"At a place in the solicitor's opening argument to the jury he stated: 'He is a bootlegger.' From the colloquy that followed, we conclude that reference is here made to the defendant. The court sustained the objection of counsel and in effect instructed the jury somewhat at length to disregard the statement.

"Insistence is here made in brief that, despite this action on the part of the trial judge, we should base error because he denied the motion for a mistrial.

"We are not unmindful that our appellate courts have declared that some statements of attorneys in argument are so prejudicial in nature and harmful in effect that they cannot be atoned nor removed from the minds of the jury. We do not think, however, that the statement of instant concern comes within this category. Had the objections been overruled, the case of Wilbanks v. State, 28 Ala.App. 456, 185 So. 770, would control."

In the Wilbanks case, supra [28 Ala.App. 456, 185 So. 771], op. cit., the court said, apropos the instant enquiry:

"In his closing argument to the jury the Solicitor made use of this statement: 'Look this defendant over. There is not a greater bootlegger in this Court House than this defendant.' This was a statement of fact not warranted by the evidence. The defendant objected to the statement; the Court overruled the objection, and the defendant duly and legally excepted.

The defendant had not testified in the case, his profert was not in evidence; and, therefore, under Constitution of 1901, Section 6, the Solicitor was not authorized to comment upon his appearance. Moreover, there was no evidence that the defendant was a bootlegger, and a statement to this effect, by the Solicitor in his closing argument, was unwarranted and should have been excluded on motion of defendant."

It is to be noted that the Wilbanks case, supra, was one of purported constructive possession. Here, we have a defendant in a dry county who, by the direct evidence, possesses (by manucaption, as it has been said) and carries a liquor therein prohibited—though it may have been legally bought in Madison County. This transportation, while not of an amount great enough to be a crime [2] separate from that of possession, nevertheless is of more than a casual amount so that we think it was permissible argument to infer that the whiskey and vodka were for sale.

The statute prohibiting possession reads:

"§ 98. It shall be unlawful for any person, firm, or corporation or association within this state to sell, offer for sale, keep or have in possession, barter, exchange or to give away, furnish at a public place or elsewhere, or otherwise dispose of the prohibited liquors and beverages described in this chapter, or any of them, in any quantity, except as hereinafter provided; or to accept the delivery of, or to receive, have in possession, or possess in this state, any of said prohibited liquors and beverages as defined by the laws of the State of Alabama, in any quantity whatsoever." Code 1940, T. 29, § 98.

The complaint charged:

2. Code 1940, T. 29, § 187, prescribes as a felony the transporting of prohibited liquors in quantities of five gallons or more.

"* * * Leonard Kennedy did buy, sell or have in possession illegally, give barter, exchange, receive, deliver, carry, or ship, prohibited liquors, contrary to law * * *"

The argument was not prejudicial.

With respect to the "hit and run" case, Kennedy says the complaint which charged the collision happened "upon a highway" was defective in that it should have averred that it was a public highway.

Act No. 427, supra, covering the offense of leaving the scene of "an accident resulting in * * * damage to a vehicle," formerly (in Code 1940, T. 36, § 31) covered "damage to property," Echols v. State, 35 Ala.App. 602, 51 So.2d 260, 261. Whatever may have moved the Legislature, we pretermit any consideration of whether or not the change from the broad to the narrow in dropping "property" for "vehicle" meant that the mischief to be corrected was that found most commonly on public roads. For while, indeed, the statute does not use the word "highway" at all, yet the prosecution brought in ample proof that, if there was a collision, it occurred on a public road.

The general rule of indictments and informations as to verbiage of mala prohibita is generally stated:

"Where a statute creates a new offense unknown to the common law, and describes its constituents, the offense may be charged in the statutory language. Gideon v. State, 28 Ala.App. 177, 181 So. 126." Cusimano v. State, 33 Ala.App. 62, 31 So.2d 139, 141.

In Hochman v. State, 265 Ala. 1, 91 So. 2d 500, 501, there is a rather extended discussion from which we extract:

"* * * it should be borne in mind that under our system of pleading, indictments are rather a state-

ment of legal conclusions, than of facts. Rivers v. State, 97 Ala. 72, 12 So. 434; Boyd v. State, 3 Ala.App. 178, 57 So. 1019."

And after discussing the exception to our conclusionary form of accusation as applied in Gayden v. State, 262 Ala. 468, 80 So.2d 501, the opinion continues:

"We are unable to see how the offense could have been more specifically described without pleading evidentiary facts, and, as has been often held, 'it is not required that an indictment set up the proof necessary to a conviction.' McLain v. State, 15 Ala.App. 24, 72 So. 511, 512; Johnson v. State, 152 Ala. 46, 44 So. 670, among others."

We hold there was no need to charge the "accident" happened on a public highway.

The originating complaints by way of affidavits and warrants arose in the County Court of Marshall County. Jury demands were made in writing which brought into operation § 25 of Act No. 346, approved September 7, 1955 (Acts 1955, p. 786), which reads in part:

"* * * in criminal cases the defendant may endorse such demand upon his appearance bond * * * or may file a written demand within fifteen days after his arrest, whereupon the Clerk shall at once transfer the case to the Circuit Court of Marshall County where it shall be placed on the jury docket."

There was no error in proceeding, as was done here, against Kennedy for the possession of a prohibited liquor without indictment or a solicitor's complaint. Under Code 1940, T. 29, § 123, the original affidavit (with amendments, if any) is the State's mode of accusation, except in felony cases.

Resisting arrest is a misdemeanor, hence there is no constitutional barrier

to a case thereof being tried without an indictment, nor of such a trial ab initio in the circuit court. See Thomas v. State, 107 Ala. 61, 17 So. 941; Witt v. State, 130 Ala. 129, 30 So. 473; Collins v. State, 218 Ala. 250, 118 So. 265 (Brown, J., dissenting); Ex parte Flowers, 218 Ala. 257, 118 So. 462 (Brown, J., dissenting). The dictum in Larkin v. Simmons, 155 Ala. 273, at page 277, 46 So. 451, seems implicitly disapproved by the Collins opinion. Cases such as Streanger v. State, 21 Ala. App. 600, 110 So. 595, and Kyser v. State, 22 Ala.App. 431, 117 So. 157, are to be strictly confined in view of the holding in the Collins case.

The provision under § 25, supra, for transfer to the circuit court for a jury trial without further or other process is akin to that referred to in the Witt case.

■ As to the case of leaving the scene of an accident, we have concluded that the prosecution was faulty in that there was no indictment brought.

In Lashley v. State, 236 Ala. 1, 180 So. 717, the forerunner of Act No. 427, supra, was held to embrace a felony. We see no change in the 1945 enactment as to this classification of the offense.

■ Under § 8 of our Constitution, as amended,[3] a felony (other than court martial and official misfeasance, etc., cases) must be proceeded against by indictment. An indictment by definition—in the absence of some express enacted change of the common law—is the accusatory bill of a grand jury, Williams v. State, 61 Ala. 33, Thorn v. State, Ala.App., 98 So.2d 859 **. Collier, C. J., by way of introductory dictum, speaking of § 12, Art. I, Constitution 1819, said in State v. Middleton, 5 Port. 484, at page 489:

"The section * * * is a clear inhibition to proceed by information

against one, charged with an indictable offence, and is equivalent to an express guaranty to the accused, of the right to demand an indictment, * * except in the cases excepted."

In Cisco v. State, 23 Ala.App. 446, 126 So. 610, 611, this court said, in reversing:

"There is no indictment in this case. The trial was had on a complaint sworn to by M. C. Thomas, in which the defendant is charged with grand larceny, which is a felony under our statute. This in the very teeth of section 8 of the Constitution of 1901."

■ The appellant cannot waive the absence of an indictment: waiver thereof is only possible under the terms of Amendment 37, supra, when a prisoner desires to plead guilty while awaiting action of a prospective grand jury on a noncapital felony charge, Code 1940, T. 15, §§ 260–266.

According to the opinion in People ex rel. Battista v. Christian, 249 N.Y. 314, 164 N.E. 111, 61 A.L.R. 793, the constitutional requisition of indictments generally in all cases of felony is not one conferring a mere personal privilege upon an accused person, but is so imbued with the public concern for due and proper administration of the law that no individual may waive it.

In De Golyer v. Commonwealth, 314 Mass. 626, 51 N.E.2d 251, it was pointed out that the Massachusetts bill of rights has consistently denied the power of the Legislature to permit trial which could lead to imprisonment in the State prison save there be an indictment. The court went on to approve there a statute (somewhat like our §§ 260–266, supra) which permitted the written waiver of an indictment with consequent prompt arraignment. The opinion points out that the Christian

---

3. See Amendment No. 37. A good source of the background of this change in our organic law is found in 14 Quar.Rep.A.G. 150.

** Ante, p. 227.

case, as to nonwaiver, does not apply in all states, citing also Edwards v. State, 45 N.J.L. 419.

However, a reference to the annotation on the right to waive the lack of an indictment at 61 A.L.R. 798–802, shows a majority of the cases there, including Kyser v. State, supra, are in accord with the Christian case. See also Annotation, 56 A.L.R. 2d 837.[4] For the Kentucky Court of Appeals, the opinion of able Commissioner Clay in Singleton v. Commonwealth, 306 Ky. 454, 208 S.W.2d 325, is a reaffirmation of the nonwaiver doctrine where jurisdiction could be conferred only by indictment.

It is well to remember the wording of our own Constitution on this point:

"No person shall for any indictable offense be proceeded against criminally by *information*, except * * *" Amend. 37. (Italics supplied.)

As the Supreme Court of Louisiana stated in State v. Straughan, 229 La. 1036, 87 So.2d 523, 528 (4–3 decision), a case involving a short form of charge, i. e., by name and article number of the offense vis-a-vis a constitutional provision that an accused be informed of the nature and cause of the accusation against him:

"Needless to say, we have found that the decisions in all states turn, of necessity, upon their peculiar constitutional and statutory provisions as applied to the particular form of charge in, and the facts of, the case under consideration. In this state also these are controlling, irregardless of views expressed by other courts, and also irregardless what some think the law ought to be or wish it might be. * * *"

Historically, in Alabama the Christian case deserves more than the usual deference and weight which is due an opinion from a respected sister court of the Anglo-American common law tradition. In the Attorney General's opinion (Vol. 14, p. 150), supra,[5] that decision was relied upon along with the Kyser case as authority for requiring a revision of § 8 of the Constitution. The opinion was addressed to the Hon. W. G. Hardwick, then a member of the House Judiciary Committee. Thus, its persuasive force has etiological as well as rational foundations.

 Under the doctrine that the judgment of leaving the scene of an accident is void, it follows that it will not support an appeal (see Kyser v. State, supra, Taylor v. State, 23 Ala.App. 265, 123 So. 281), and hence the appeal therefrom must be dismissed.

The judgment in the case of possession of prohibited liquor is due to be affirmed.

Kennedy raised the defect in the complaint which charged him with resisting an officer, and, accordingly, the judgment in that case is due to be reversed and remanded.

---

4. Art. II, § 8 of the Illinois Constitution, S.H.A., differs from our amended § 8. The Alabama bill of rights prohibits an information in felony cases except as there stated. Hence, People v. Bradley, 7 Ill.2d 619, 131 N.E.2d 538, 56 A.L.R. 2d 832, is to be distinguished.

5. See footnote 3.