LEIGH M. CLARK, Retired Circuit Judge.
The indictment upon which appellant was tried is as follows:
“The Grand Jury of said County Charge that, before the finding of this Indict- *1206 rnent, Charles Fowler, alias Charles D. Fowler, whose name is to the Grand Jury otherwise unknown, unlawfully and with malice aforethought, did assault Brenda J. Lee with the intent to murder her in said County against the peace and dignity of the State of Alabama.

“Count II

“The Grand Jury of said County Further Charge that, before the finding of this Indictment, Charles Fowler, alias Charles D. Fowler, whose name is to the Grand Jury otherwise unknown, the driver of a motor vehicle, in Houston County, Alabama, involved in an accident resulting in injury to Brenda J. Lee, wherein the said, Brenda J. Lee was bruised and was injured internally, and received other bodily injuries, did fail to immediately stop such vehicle at the scene of such accident, and did fail to give his name and address, and the registration license number of his vehicle, and did fail to render to Brenda J. Lee, the person injured in such accident, such reasonable assistance, including the carrying of such injured person to a physician or surgeon for medical or surgical treatment, it being apparent that such treatment was necessary, as required by law in the State of Alabama.” The jury returned a verdict as follows:
“We, the Jury, find the defendant, Charles Fowler, guilty of Leaving Scene of Accident as charged in the Indictment. We fix his fine at $250.00.” The court imposed additional punishment of “12 months hard labor for Houston County, Alabama,” and sentenced appellant accordingly.
At the conclusion of the evidence for the State, defendant moved to exclude the evidence. The motion was overruled. Defendant requested in writing the affirmative charge in favor of defendant as to each count of the indictment. The court refused both of such charges.
The sole question presented on appeal is whether the evidence supports the verdict of the jury and the judgment rendered thereon.
It seems clear, and there is no contention otherwise, that the verdict is not referable to the first count of the indictment, that, if referable to either count, it is to Count II only.
Witnesses for the State were Dan Bag-well, Brenda Lee, Tana Harris, Jeanette Weeks, Nathan Stanton and Dan McGriff. Defendant did not testify and called no witnesses in his behalf. There was little, if any, material conflict in the evidence.
Dan Bagwell testified that he had been driving a 1973 Cheyenne Pickup truck on the night of December 9,1977, when he was asked for a ride by defendant, whom Bag-well knew as a student in high school in Houston County, they both being approximately seventeen years of age. With Bag-well’s permission, defendant boarded the truck and sat down on the passenger’s side of the seat of the truck. They drove to the Jr. Food Store on the Montgomery Highway in Dothan. The truck was brought to a stop in the parking lot of the store, about thirty-five yards from the highway, and in front of the store. Instead of driving to the curb in front of the store, the truck was stopped about “a length and a half from the curb,” because there was a car parked at the curb, and enough room was left for the car to get out. In stopping the truck, Bag-well placed the gear in park but did not apply the parking brakes. He left the engine running and left the car to talk with Brenda Lee whom he saw in front of the store. During all the time that Bagwell observed defendant, defendant was sitting on the passenger’s side of the seat of the truck. Defendant was highly intoxicated. Bagwell had drunk two or three beers that night. He talked with Brenda for about five minutes while they were standing between the truck and the side of the store. During that time, the automobile between the truck and the store had pulled out. The next thing Bagwell remembered was as he and Brenda were hit by the truck as it moved forward across the curb, the sidewalk of the store and drove into the store through its plate glass window. He had some torn ligaments, a sprained ankle and *1207 some cuts and bruises, was rendered unconscious, but partly regained consciousness on his way to the hospital in an ambulance. He said he left the engine running because of cold weather. He said the truck would idle “kind of high,” that it had never moved out of its park status automatically. He considered the truck as belonging to him from a practical standpoint, though it had to be in his father’s name on account of Bagwell’s age.
Brenda Lee’s testimony was substantially in accord with that of Bagwell. She had ridden up to the store a short time before Bagwell and defendant arrived. She talked with Bagwell in front of the store and as they were walking into the store, the “truck hit us.” She woke up in the hospital, where she remained for about two weeks, having sustained a fractured pelvis and a fractured hip socket and lacerations to her head. She knew defendant as well as Bagwell and had been on good terms with him. There had never been any ill feelings between them. She knew defendant was in the truck, sitting on the passenger’s side; she never observed him in any other position, but had not paid any particular attention to him.
Tana Harris and Mrs. Jeanette Weeks both observed the accident, and there was little difference, if any, in their testimony. Each said that she saw the truck as it drove up and parked, that defendant remained seated on the passenger’s side until after the accident occurred. Miss Harris was a schoolmate of defendant and had known him about four years. They were of about the same age. She said she heard a loud noise like a motor racing and saw the truck move, going real fast. The truck hit the glass “and the glass was going everywhere when it went into the store.” Defendant ran out “the door” and “started running up that way.” Defendant got out of the truck' on the passenger’s side, “kind of ran around the parking lot and then ran off through the woods.” He was wandering around and after a while ran off “opposite from where he ran to start with.” Defendant was walking up the side of the road when the police arrived. She said:
“Well, when he first left, he ran off to the right of the store and headed through the woods there and came back walking down the highway and walked through the front part of the parking lot there and started heading down the grassy part there up front.”
She said that was when the police arrived and that the grassy spot was about the same distance from the front door of the Jr. Food Store as it was from where she was sitting “to the back of the Courtroom, . maybe a little farther.”
Mrs. Weeks testified that she was sitting in her automobile while her husband was inside the store. She noticed defendant as he sat in the truck after Bagwell had left it and commenced his conversation with Brenda Lee. She said defendant “was turning in the seat, he would look out the window and he would raise his arms back on the back of the truck and then he would lean forward like that and then he would turn. He was not still at all. He was constantly moving.” He was sitting toward the driver’s side, but he was closer to the door on the passenger’s side than he was the driver’s side. She said:
“He came forward, I remember that. And when he did, the truck came forward with him.”
Her testimony continued as follows:
“Q When you say he came forward, did he come forward toward the front of the car or toward the driver’s side or where, which way did he lean?
“A I wouldn’t be able to say. • He just came forward.
“Q Tell what kind of speed or rate that the truck was going? Was anyone in the truck with him?
“A No.
“Q Tell us the speed or rate that the truck went that time?
“A Fast. The truck didn’t take off in a hurry, but was just like you put your foot on the accelerator, it just went. You know. That is the best I can tell you.
[[Image here]]
*1208 “Q Okay. What happened after the truck went forward?
“A You want me to tell what they did?
“Q Describe what you saw.
“A The truck hit them and they went up through the glass with the truck as it went forward and then he got out.
“Q The Defendant got out?
“A Yes, he got out of the truck. Just _I would say a few minutes before he got out. And then he got out and came down alongside the truck toward where everybody had jumped out of their cars and was standing.
“Q When you say a few minutes, do you mean a moment or a minute or quite a bit of time or what?
“A No, it wasn’t quite a bit of time. I would say just a few moments.
“Q Okay. How did he get out of the store?
“A He came out by the truck.
“Q Did he come through the hole in the window or how did he come out?
“A Yes. Where the glass broke, he came through there.
“Q Okay. What did he do then?
“A Just wandering from one to the other, everybody was watching him, nobody would touch him. He was just wandering and he was still with his hands up.
“Q Okay. What did he do then?
“A He went off to my left into the woods.
[[Image here]]
“Q Did you see Charles Fowler up on that red clay hill bank next to the parking lot when the police got there?
“A No, sir.
“Q You did not?
“A No, sir. I was inside the store.
“Q Do you know_Well, you don’t know that. How long after the police arrived was Charles Fowler back on the scene of that accident.
“A Well, I am not sure. It was after the first medic and the police got there. And he was just out there wandering around.
“Q How long did he wander around out there, Mrs. Weeks? Five, ten minutes?
“A Oh, no. Longer than that, because it took a while for the police to get there and for the fire medics.
“Q Wandered around for over ten minutes, do you think?
“A Yes.
[[Image here]]
“Q Wandering in the parking lot? For approximately ten minutes?
“A I am confused as to what you mean. Are you saying walking around before he started for the woods?
“Q Yes.
“A Now he didn’t do that for ten minutes, that was maybe five minutes, going from one to the other and then he just took off from the side of the store.
“Q O.K. And then he came back?
“A Yes. If I say yes, it is because somebody told me that he came back. I did not see him.
[[Image here]]
“Q Did he leave before the fire medics and police got there and go to the woods?
“A Just a minute. Let me think. Yes.
“Q All right. And the next time you saw him was when the police brought him back.
“A Yes”.
The other two witnesses, Nathan Stanton and Dan McGriff, were officers of the Do-than Police Department. Officer Stanton arrived at the scene a minute or two before Officer McGriff. He noticed the pickup sitting partly inside the Jr. Food Store; Dan Bagwell was lying six to eight feet to the left front of the truck and Brenda Lee was lying approximately two feet directly in front of the truck. Brenda Lee was totally unconscious, and Bagwell was “on and off. It wasn’t very coherent.” The witness said that he did not see defendant until approximately five or six minutes after the witness arrived at the scene. He *1209 saw defendant for the first time when Officer McGriff left and returned with the defendant.
Officer McGriff testified that he did not see defendant around the scene when the witness first arrived. He said he was in the parking lot trying to find some witnesses when he saw defendant “running down the highway”; that he caught up with the defendant about “fifty or seventy-five yards north of the Jr. Food Store.” Defendant “was running over the hill there, a little hump”; he was running at about “a half run.” He arrested defendant “for public drunk and brought him back to the Jr. Food Store and put him in the police car.” His testimony continued as follows:
“Q Was Charles Foster as a result of that automobile accident in shock?
“A I wouldn’t call it shock, no.
“Q What would you call it?
“A He was, what I call a little shook up.
“Q Dazed?
“A Not really dazed. He was_he was drunk, really.
“Q O.K.
“A Just drunk.”
Title 32 of the Code of Alabama, 1975, effective on the date of the occurrence alleged in the indictment, provides in pertinent part as follows:
“§ 32-10-1. Accidents involving death or personal injuries.
“(a) The driver of any motor vehicle involved in an accident resulting in injury to or the death of any person, or in damage to a motor vehicle or other vehicle which is driven or attended by any person, shall immediately stop such vehicle at the scene of such accident or as close thereto as possible and shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 32-10 — 3. Every such stop shall be made without obstructing traffic more than is necessary.
“(b) The director shall revoke the driver’s license of a person convicted under this section.
“§ 32-10-2. Duty to give information and render aid.
“The driver of any motor vehicle involved in an accident resulting in injury to or the death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, shall upon request exhibit his driver’s license to the person struck or the driver or occupant of or person attending any motor or other vehicle collided with or damaged and shall render to any person injured in such accident reasonable assistance, including the transportation of, or the making of arrangements for the transportation of such person to a physician or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such transportation is requested by the injured person.”
“§ 32-10-3. Duty upon striking unattended vehicle.
“The driver of any motor vehicle which collides with any motor vehicle or other vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place in or on the vehicle struck a written notice giving the name and address of the driver and/or the owner of the vehicle doing the striking and a statement of the circumstances thereof.”
At the outset, we are faced with a problem not expressly raised on appeal, but which has been raised before, particularly by Judge Cates in Kennedy v. State, 39 Ala.App. 676, 107 So.2d 913, 925 (1959). It was therein contended by appellant that the complaint in a “hit and run” case which *1210 charged the collision happened “upon a highway” was defective in that it should have averred that it was a public highway. The court held that it was not necessary to charge that the “accident” happened on a public highway, that the statute did not expressly state that the accident must be on a highway, public or private, and that the language of the indictment met all the requirements of the language of the statute and was therefore sufficient. However, the court pointedly observed that the forerunner of the particular statute then involved had originally covered an accident resulting in “damage to property” as well as “damage to a vehicle,” but by the time of Echols v. State, 35 Ala.App. 602, 51 So.2d 260, 261, (1951) coverage of “damage to property” had been eliminated by statute. Although obviously considering the question whether the statute covered accidents that did not occur on a public highway as a serious one, the court concluded that a decision thereon was not necessary at that time because of the fact that the evidence showed conclusively that the particular accident did occur on a “public” road. The court in Kennedy, supra, said:
“Act No. 427, supra, covering the offense of leaving the scene of ‘an accident resulting in * * * damage to a vehicle,’ formerly (in Code 1940, T. 36, § 31) covered ‘damage to property,’ Echols v. State, 35 Ala.App. 602, 51 So.2d 260, 261. Whatever may have moved the Legislature, we pretermit any consideration of whether or not the change from the broad to the narrow in dropping ‘property’ for ‘vehicle’ meant that the mischief to be corrected was that found most commonly on public roads. For a while, indeed, the statute does not use the word ‘highway’ at all, yet the prosecution brought in ample proof that, if there was a collision, it occurred on a public road.”
The question raised, but as to which consideration was pretermitted, in Kennedy, whether §§ 32-10-1, 32-10-2 and 32-10-3 are applicable where the driver of the offending vehicle was not traveling upon a public highway, is still unanswered, and is still, we think, worthy of serious consideration. The sound conclusion reached in Collins v. State, Ala.Cr.App., 346 So.2d 43 (1977) that one should be liable under the statutory law in the event of an accident as to which defendant was driving a motor vehicle on a public road and caused or allowed the vehicle to leave the public road for about thirty feet and strike the victim while sitting on a porch off the public road is not opposed to the conclusion, right or wrong, that one is not criminally liable under the particular statutory law if there is no driving of the motor vehicle by the accused upon a public highway.
Most of the courts of other states that have passed upon the question agree with the statements in 7 Am.Jur.2d 724, as follows:
“Where a statute establishing a criminal offense in connection with the operation of a motor vehicle makes no reference to the offense occurring on a public highway, it is generally held to apply throughout the state, including private ways and premises. . . . Similarly, where a statute making it an offense not to stop and run to aid after an accident does not specify that the hit-and-run offense should occur on public highways, it applies to accidents occurring on private premises, or off a public highway. On the other hand, where a statute establishing an offense in connection with the operation of a motor vehicle, such as driving while intoxicated, or speeding, or reckless driving, or failure to stop after an accident, is expressly made applicable to the operation of motor vehicles on public highways, it does not apply to the operation of motor vehicles on private ways or premises.”
The statements just quoted are strongly buttressed by a large number of authorities, including Salazar v. State, 145 Tex.Cr.R. 478, 169 S.W.2d 169 (1943); Meadows v. State, 211 Miss. 557, 52 So.2d 289 (1951); State v. Gallagher, 102 N.H. 335, 156 A.2d *1211 765 (1959); State v. Tuckus, 4 Conn.Cir. 495, 236 A.2d 104 (1967); State v. Valeriani, 101 N.J.Super. 396, 244 A.2d 510 (1968); Laughlin v. Tulsa, Okl.Crim., 492 P.2d 1131 (1972); People v. Helm, 27 Ill.App.3d 675, 327 N.E.2d 544 (1975). Most of the cases, however, make it clear that the statutes involved related expressly to accidents where persons were injured or property was damages, and none of them answers the question raised in Kennedy, supra.
In addition, to the suggestion that the substitution by the Legislature of the word “vehicle” for “property” may have evinced a legislative intent to limit the application of the statute to accidents on “public ways,” we think the suggestion should be made that the statutory law on the subject at the present time and at the time of the alleged offense includes a provision of Acts 1943, No. 558, T. 548, § 5; now, Code 1975, § 32-10-4, as follows:
“The driver of any motor vehicle involved in an accident resulting only in damages to fixtures legally upon or adjacent to a highway shall take reasonable steps to locate and notify the owner of persons in charge of such property of such fact and of his name and address and of the registration number of the vehicle he is driving and shall upon request exhibit his driver’s license and shall make report of such accident when and as required in § 32-10 — 5. (Acts 1943, No. 558, p. 548, § 5).”
It is to be seen that there is nothing in the statutory law that permits the inclusion of an accident that involves damage to any property, but does not involve injury to any person, unless the property is a vehicle or unless it is a fixture legally upon or adjacent to a highway.
It is also to be noted that by an amenda-tory act since Kennedy v. State, supra, Acts 1969, No. 272, p. 603, as now found in Code 1975, § 32-10-8, as to “Uniform Accident Report Forms Required” under the chapter in which the law is codified (Chapter 10, Motor Vehicle Accidents), the required written accident report to be made by persons involved in accidents and by investigating officers shall include detailed information including “Highway design and maintenance (including lighting, marking and road surface).”
The word “highway” as above noted, to be found in § 32-10-4 and § 32-10-8 of the Code 1975, is defined in § 32-1 — 1 as follows:
“(12) HIGHWAY. Every way or place of whatever nature open to the use of the public as a matter of right for purposes of vehicular travel. The term ‘highway’ shall include the full width of the right-of-way of any public road, street, avenue, alley or boulevard, bridge, viaduct or trestle, and the approaches thereto, within the limits of the state of Alabama. The term ‘highway’ shall not be deemed to include a roadway or driveway upon grounds owned by private persons.”
We doubt that the legislative intent is to be determined, as some courts have apparently done, by the similarity to travel on highways of vehicle traveling in large shopping center areas, providing accommodation for the daily movement of thousands of cars by members of the general public patronizing the centers. The same reasoning could be applied to reckless driving and driving while intoxicated, as well as many other crimes, that are expressly limited to “public” ways or roads. Code 1975, § 32-5-50, and § 32-5-170.
We thoroughly agree with what was said in State v. Gallagher, supra, 102 N.H. 335, 156 A.2d 765, 768, 77 A.L.R.2d 1167, 1171, as follows:
“The increased use of automobile under changing conditions points up the desirability of legislative re-examination of the sporadically amended provisions of the motor vehicle law so that inconsistencies may be removed in order to best protect public interest.”
If the Legislature does not answer the question as suggested in the near future, it *1212 will doubtless be necessary for the courts to do so. Nevertheless, as the point has not been raised here and we do not have the benefit of argument thereon by the parties, and as, as will be noted, a solution of the question is not necessary to an appropriate disposition of the appeal in this case, we will continue for the time being to preter-mit a determination of the question.
The main, if not the sole, line of contention between the parties on appeal is as to whether defendant was a “driver” of the motor vehicle. Appellant zealously contends that he was not, and appellee with equal zeal contends that he was. Each relies upon the definition of “driver” as found in Code of Alabama 1975, § 32-1-1(7) as “Every person who drives or is in actual physical control of a vehicle.”
Our attention has not been called to a case that is clearly dispositive of the question. We have noted some cases in which somewhat similar circumstances were involved and the court reached a conclusion whether the one charged with being the driver was actually a driver.
Most of the cases have turned on the interpretation by the courts of the particular statutes involved. The most recent case, which received comprehensive treatment, is State v. Graves, S.C., 237 S.E.2d 584, 588 (1977). The prosecution was for driving a motor vehicle while intoxicated, but the statutory definition of a driver was, as statutorily stated in Alabama: “Every person who drives or is in actual physical control of a vehicle.” By a majority opinion of three to two, the court held that defendant’s conduct in occupying an automobile with the engine running and the transmission in gear, which motor vehicle began to move when defendant got out of it on request of a patrolman, did not constitute “driving” within the meaning of the statute proscribing driving under the influence of intoxicants, although accused was “in actual physical control” and “operating” the motor vehicle while intoxicated. Many authorities are therein cited in which a distinction between a “driver” and an “operator” of a motor vehicle is discussed. There .was a strong dissent in Graves, supra.
The conclusions that have been reached in close cases under varying statutes have been interesting and enlightening, but they have left unanswered many questions that may arise in somewhat similar, but uniden-tical, situations. In our conclusion reached here on the point, we deliberately refrain from indicating what we might hold in circumstances that are not identical with those involved in instant case.
As we see it, the alternative, “is in actual physical control of a vehicle,” in the definition of a driver as a “person who drives” does not aid in solving the question. It is reasonably certain that the action of defendant, as distinguished from the automatic action of the truck, caused the truck to move the distance of approximately twice the length of the truck. We hold that the evidence to the effect that the truck would not have moved forward without a shift by defendant of the gear lever from park, through reverse, through neutral, to drive and that the increased tempo of the motor indicating that defendant had placed his foot on the accelerator is a sufficient basis for a finding that defendant, intoxicated, though he was, voluntarily moved the truck, voluntarily became the driver, though for a short distance only, of the motor vehicle. We do not here hold, and we expressly leave for future consideration whether inadvertent action by defendant causing such movement of the truck would have put him in the category of a driver of it.
We now come to what we consider is a barrier to an affirmance of appellant’s conviction and sentence.
It is to be noted from the language of Count II of the indictment as compared with §§ 32-10-1 and 32-10-2 of the Code of 1975 that the indictment contains a *1213 charge that defendant violated a provision of § 32-10-1 requiring the driver to “immediately stop such vehicle at the scene of such accident” but does not include a charge, constituting a violation of a provision of the same section, that the driver “shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of § 32-10-3.” Except for the language in the indictment that defendant “did fail to immediately stop such vehicle at the scene of such accident” the indictment charges a violation of § 32-10-2 only, in which section there is no reference to returning to or remaining at “the scene of the accident.”
The averment of Count II of the indictment that defendant “did fail to immediately stop such vehicle at the scene of such accident” is conclusively refuted by the evidence.
As to the charge in Count II of the indictment that defendant “did fail to give his name and address, and the registration license number of his vehicle,” the evidence lacks substance. His activity is vaguely described by two witnesses as “wandering” around or coming down “along side the truck toward where everybody had jumped out of their cars and was standing . wandering from one to the other . just wandering and he was still with his hands up . walking around before he started for the woods . . . maybe five minutes, going from one to the other and then he just took off from the side of the store.” He could hardly have given “the registration number of the vehicle” other than by looking at the tag at the rear of the truck, which doubtless was exposed to the view of everybody in the parking lot, including the police officers as they arrived. He apparently was well known by persons at the parking lot. The owner of the vehicle and Brenda Lee, the two injured persons, both knew him well and knew that he lived in Dothan. The evidence also shows that Brenda Lee was with several young people whom she knew at the time that Dan Bagwell and defendant arrived at the Jr. Food Store. There is nothing to indicate that defendant ever failed to give his name and address, that he was ever asked for his name and address, or that his name and address were not a matter of common knowledge by those at the scene of the accident at the time it occurred and for several minutes thereafter.
Any conviction of defendant for the alleged failure “to render to Brenda J. Lee, the person injured in such accident, such reasonable assistance, including the carrying such injured person to a physician or surgeon for medical or surgical treatment” would be in ignoration of the realities of the situation. The evidence shows that defendant was highly intoxicated. It would have been entirely inappropriate, and doubtless would have been prevented by others, for him to have attempted to render assistance, including the carrying of Brenda Lee to a physician or surgeon for medical or surgical treatment. Brenda Lee was inside the store about two feet in front of the truck at the time defendant got out of the truck, came through the broken plate glass window from the parking lot in front of the store. There is no evidence as to his actual physical condition other than that he was highly intoxicated. But this of itself disqualified him as one to take over the rendition of assistance to Brenda Lee.
The verdict finding defendant guilty of “Leaving the Scene of an Accident as charged in the Indictment” could probably be sustained if there had been a charge in the indictment that he left or did not “remain at the scene of the accident” as prescribed in § 32-10-1. The language of the verdict does not constitute a mere mistake in the form of the verdict. It is clear that the finding of the jury was in accordance with the main insistence of the State that defendant left or did not remain at the scene of the accident, that though he did not leave it a greater distance than approximately fifty or seventy-five yards, he ran from the scene and was pursued and *1214 brought back to the scene by Officer McGriff.
Notwithstanding the fact that there was substantial evidence that defendant was guilty of a crime not charged in the indictment, there was no substantial evidence that he was guilty of any crime charged in Count II of the indictment, the only count to which the verdict could conceivably be referable. A scintilla, even if any, is not enough. Irrespective of the confusion that may have existed at one time, the principle is firmly established in Alabama that the scintilla rule, applicable in civil cases, cannot be so applied to criminal cases as to justify the submission of a criminal case to the jury if and when the evidence of guilt consists of a mere scintilla. Ex parte Grimmett,[1] 228 Ala. 1, 152 So. 263 (1933); Blue v. State, 246 Ala. 73, 19 So.2d 11 (1944); Clark v. State, 257 Ala. 95, 57 So.2d 384 (1952); Massengale v. State, 36 Ala.App. 195, 54 So.2d 85 (1951); White v. State, 37 Ala.App. 424, 69 So.2d 874 (1954); Lloyd v. State, 50 Ala.App. 646, 282 So.2d 85 (1973); Smith v. State, Ala.Cr.App., 337 So.2d 53 (1976).
For the error in overruling defendant’s motion to exclude the evidence and in refusing defendant’s requested affirmative charge as to Count II of the indictment,” the judgment must be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is reversed and the cause remanded.
REVERSED AND REMANDED.
HARRIS, P. J., and TYSON, DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., concurs in result.

. The Supreme Court in Grimmett suggests the possibility that the previous confusion on the subject was to some extent attributable to the failure to distinguish between a scintilla of evidence of innocence and a scintilla of evidence of guilt, that though the one would of itself disentitle the prosecution to an affirmative charge in its favor, the other never justifies the trial court in a refusal of a requested written charge in favor of defendant.